[No. 48946–7.   En Banc.   February 2, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE SMITH, *Petitioner.*

UTTER, J., WILLIAMS, C.J., and PEARSON, J., dissent by separate opinion.

*William Johnston,* for petitioner.

*David S. McEachran, Prosecuting Attorney,* and *Randall J. Watts, Deputy,* for respondent.

ROSELLINI, J.—Petitioner, George Smith, challenges his conviction on four separate counts of delivering a controlled substance. Petitioner urges that he did not receive a fair trial because he was denied access to a confidential informant. The Court of Appeals found error but held that it

was harmless. We agree with the result reached by the Court of Appeals for the reasons set out below.

## I

This case arises from an undercover drug investigation which was assisted by the efforts of two informants. With their help the police eventually arrested 17 persons for delivering controlled substances. Petitioner was among those arrested and prosecuted. Petitioner was charged with making four separate sales of marijuana to an undercover police officer. Petitioner admits selling the drugs but urges that he was entrapped. The events leading up to the sale are as follows: A friend of petitioner, one Jay Allen (hereinafter informant), initially introduced the police officer to petitioner as her husband. During one conversation, the informant told petitioner that her husband was dying and needed the marijuana to ease his pain. Petitioner, after first refusing, eventually sold marijuana to the police officer. The officer returned three times to petitioner's home and each time was successful in obtaining the drugs. The informant did not accompany the police officer on the remainder of these visits.

Prior to trial, petitioner requested that the prosecution state whether an informer had been involved and whether he or she would be called. The prosecution responded by claiming the informant's privilege.

The State asserted the informant's privilege in all the prosecutions then pending, and arranged a consolidated, in camera hearing. Petitioner was not notified of this hearing. The hearing was held on June 5, 1980, before Judge Kurtz. Both confidential informants were present. An attorney who represented several defendants in other cases was present and another attorney in still another case was allowed to submit written questions. Both defense counsel's questions were directed at the informant's involvement with their clients. The written questions, however, also included a list of general questions regarding Smith and several other defendants. In response to these questions,

the informant denied supplying drugs to any of the defendants. She also denied threatening or inducing the defendants to sell drugs.

Additional questions were directed at threats of violence received by each of the informants. The informant testified that two of the other defendants along with several men accosted her brother–in–law and threatened to kill the informant.

At the close of the in camera hearing, the judge concluded that the informant's testimony would not be helpful to any of the defendants and ruled that her presence at trial would not be required. He also refused to reveal her identity.

Smith's trial began on June 9, 1980. The State moved in limine to preclude defense counsel from referring to the confidential informant by name. To support its motion, the State referred to Judge Kurtz's ruling in the in camera hearing. Defense counsel responded by noting that this was the first time he had heard of the hearing. The trial judge deferred his ruling on the motion until after opening statement. During opening statement, defense counsel was allowed to refer to the informant by name.

The police officer was the State's only witness in its case in chief. He described four sales in which he purchased a total of 3½ ounces of marijuana from Smith. The officer also testified he saw larger quantities of marijuana, perhaps as large as 2–pound blocks, in Smith's home. The officer testified that Smith told him that he could supply large quantities of marijuana at $560 per pound.

On cross examination, the police officer admitted that the "confidential informant" introduced him to Smith as the informant's husband and told Smith that her husband was dying.[1] The officer stated that the comment about dying occurred after the first buy and that he corrected Smith's misapprehension before the second buy by informing him that he was only ill, not dying. Defense counsel asked the

---

[1] In fact, the informant's real husband was dying at the time.

officer if the confidential informant was Jay Allen and the State objected. The trial judge indicated that he was inclined to overrule the objection to this question, but the parties were eventually sent to Judge Kurtz to argue the matter. Defense counsel, after explaining to Judge Kurtz that he had tried unsuccessfully to locate and subpoena the informant, asked Judge Kurtz to direct the prosecutor to tell the defense where she was so she could be subpoenaed. Judge Kurtz ruled that

> that person does not have to be produced, nor does that person have to be present at the trial for cross examination, because on the basis of the hearing that the Court held the other day, there's nothing in the testimony that would indicate to the Court that any of the testimony of this confidential informant would be helpful to the defense.

Sealed Report of Proceedings, at 68–69.[2]

Petitioner testified at trial and stated that his friend, the informant, convinced him that the police officer was her dying husband who needed marijuana to ease his pain. Petitioner said that although she was only present during the first buy, she came to his house several times between each of the sales and talked with Smith about her husband's impending death. Smith said that the informant asked him several times to sell marijuana before he agreed to do so. He also testified that although he regularly used marijuana, he did not sell it and did not have large quantities of it in his house. Finally, Smith denied that the police officer ever said he was not dying.[3]

Smith was found guilty of all four counts and was sentenced to 5 years in prison, suspended to 5 years' probation. The Court of Appeals, Division One, affirmed in an unpublished opinion. *State v. Smith,* 31 Wn. App. 1055 (1982).

---

[2]Pages 1–64 of the in camera hearing transcript were sealed by court order. Subsequent to petitioner's unsuccessful appeal before the Court of Appeals, Commissioner Crooks made the transcript available to both parties.

[3]On rebuttal, a second officer corroborated the officer's testimony on this point.

After Smith's motion for reconsideration was denied, he filed in this court both a petition for review and a personal restraint petition. We granted the petition for review to resolve important issues concerning a defendant's right to compel witnesses.

## II

The right to compel witnesses is guaranteed by the Sixth Amendment, which provides, among other things, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] *to have compulsory process for obtaining witnesses in his favor*". (Italics ours.)

These rights were recognized and applied to the states in *Washington v. Texas*, 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967). There, the Court described importance of the right:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington*, at 19.

Although guarded jealously, the right is not absolute. The Court's holding in *Washington* limits the right to compel witnesses to those witnesses who are material to the defense. In *Washington*, the Court found error because the defendant was denied access to a "witness who was physically and mentally capable of testifying to events that he had personally observed, and *whose testimony would have been relevant and material to the defense*." (Italics ours.) *Washington*, at 23.

As suggested above, the defendant carries the burden of showing materiality. This burden has been described as

establishing a colorable need for the person to be summoned. *Ashley v. Wainwright,* 639 F.2d 258 (5th Cir. 1981).

Here, the State argues that petitioner has failed to establish a material need for the informant and that even if the need was established, the witness' status as a *confidential* informant protects her from being forced to testify.

The petitioner argues that the informant was critical to his defense of entrapment and that the procedures used to determine her materiality were inadequate. He concludes, therefore, that his right to due process was violated. Because we find the informant was not a material witness, we find no due process violation. Our decision is based not upon the factual findings of the judge but upon the law of entrapment. We find the facts alleged by the petitioner, even if corroborated entirely by the informant, are inadequate as a matter of law to support the entrapment defense.

In Washington, the defense of entrapment is defined by statute. RCW 9A.16.070 provides:

(1) In any prosecution for a crime, it is a defense that:
(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and
(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.
(2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

■ Both by statute and court decision, the entrapment defense focuses on "the intent or predisposition of the defendant to commit the crime". *Hampton v. United States,* 425 U.S. 484, 488, 48 L. Ed. 2d 113, 96 S. Ct. 1646 (1976). Entrapment occurs only when the criminal design originated in the mind of the police officer or informer, and the accused is lured or induced into committing a crime he had no intention of committing. *State v. Waggoner,* 80 Wn.2d 7, 10, 490 P.2d 1308 (1971). A police informant's use of "a normal amount of persuasion to overcome" and "expected resistance" to sell drugs "does not constitute

entrapment and will not justify an entrapment instruction." *Waggoner,* at 11. Similarly, "that solicitation is made in connection with an appeal to sympathy or to friendship" does not, by itself, constitute entrapment. *State v. Swain,* 10 Wn. App. 885, 889, 520 P.2d 950 (1974). Furthermore, the police, in affording a suspect with an opportunity to violate the law, may use deception, trickery, or artifice. *State v. Swain, supra; State v. Gray,* 69 Wn.2d 432, 418 P.2d 725 (1966).

Thus, both by statute and court decision the defense requires proof of two distinct elements. First, the defendant must demonstrate that he was tricked or induced into committing the crime by acts of trickery by law enforcement agents. Second, he must demonstrate that he would not otherwise have committed the crime. *See* 21 Am. Jur. 2d *Criminal Law* § 202, at 365 (1981). Here, defendant cannot prove the first of these elements.

Petitioner's allegation of entrapment is essentially based on the proposition that he felt sorry for the police officer because he thought he was dying. Generally, appeals to sympathy alone are not sufficient to establish entrapment. *State v. Swain, supra.* Human experience tells us that sympathy generally plays little or no part in such transactions. Although a sympathetic individual, concerned about a fellowman crying in great pain, might be induced to give the person marijuana, the same cannot be said of a sale of the drug.

Courts have thus required some additional inducement beyond the sympathetic appeal. For instance, in *Sherman v. United States,* 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819 (1958), the police informant not only appealed to Sherman's sympathy as a fellow drug addict, he also induced his return to the drug habit. The Court ruled there that entrapment was established as a matter of law. Petitioner alleges no similar misconduct or unfair inducement here. Thus, we conclude his allegations are insufficient as a matter of law to establish entrapment. Our conclusion is bolstered by the evidence that the petitioner here, unlike that

in *Sherman,* chose to sell the drugs rather than passing them along free or at cost.

In summary, the informant's testimony was only material to the defense of entrapment. Thus, her presence at trial was not necessary. We find, therefore, that the petitioner did not and could not prove materiality of this witness.

■ Our conclusion should not, however, be taken as in any way sanctioning the procedures the hearing judge used in reaching his conclusion that the witness was not material. Those procedures were entirely inadequate to protect the petitioner's due process rights and conflicted with fundamental notions of fairness.

In *State v. Harris,* 91 Wn.2d 145, 588 P.2d 720 (1978), this court approved procedures for resolving the conflict between the State's need to protect witnesses through assertion of the informant's privilege and the defendant's Sixth Amendment rights. We noted there that the preferred method for making this determination is to hold an in camera session where the judge hears the informer's testimony. *Harris,* at 150. Although such a hearing was held here, it appears that everyone was invited except the petitioner. The State asks us to excuse this minor omission on the theory that the petitioner's interests were protected by allowing other defendants' counsel to question the witness. Also, the State suggests the petitioner's interests were protected by the trial judge questioning the witness and entering factual findings. We disagree. The purpose of an in camera hearing is to allow an individual defendant the right to inquire of the witness. If, for security reasons, counsel or defendant cannot be permitted access to the witness, the questions may be written out and asked by the trial judge. But either procedure presupposes that each concerned defendant is notified of the proceeding and given the opportunity to develop questions. Furthermore, notifying some defendants but not others is not sufficient. Each defendant may have different defense theories and therefore different questions to ask of the witness.

Nor can the judge assume an omniscient posture, flaw-

lessly intuiting each defense theory so as to ask all the proper questions. In our adversary system this function belongs exclusively to each defendant's attorney. No other procedure satisfies even minimal notions of due process and fairness common to all civilized societies.

In conclusion, had this witness been material, petitioner would have been denied basic due process in violation of the Sixth Amendment. Our holding that the witness was not material, because the petitioner's defense of entrapment failed as a matter of law, makes these proceedings, though procedurally unexcusable, not violative of his Sixth Amendment right to compel witnesses.[4]

We therefore affirm.

STAFFORD, BRACHTENBACH, DOLLIVER, DORE, and DIMMICK, JJ., concur.

UTTER, J. (dissenting)—An ordinary citizen, never having sold marijuana in his life, is approached by the distraught wife of a man slowly dying and in great pain. After repeated requests for marijuana to ease the dying man's pain, the citizen gives in and provides the drug. Miraculously, the dying man transforms himself into a policeman, as the frog became a prince, and announces the citizen's arrest and placement in the same criminal class as those felons who daily deal drugs to young schoolchildren.

While this may or may not be what actually happened in the present case, it is the story petitioner George Smith sought to present, and was prevented from fully presenting, to the jury. By holding that the corroborative evidence sought by Mr. Smith was immaterial the majority approves the scenario just set forth. I cannot countenance, and our prior decisions do not require, such a result.

---

[4]Petitioner also argues that the jury should have been instructed on who bears the burden of proving or disproving entrapment. Our disposition of this case makes it unnecessary to reach this issue.

## I

Initially, it is important to define the standard of review we should apply. The majority concedes that the hearing judge erred in conducting a materiality hearing without defense counsel present. The majority further concedes, at least by implication, that this error would necessitate reversal if Mr. Smith's entrapment defense were not insufficient as a matter of law. The test here is thus identical to that applied to failure to give an entrapment instruction, *i.e.*, whether a jury might reasonably have found entrapment from the proffered evidence (*State v. Lambert,* 148 Wash. 657, 659, 269 P. 848 (1928)). In making this determination, we must resolve all conflicts in the evidence in favor of Mr. Smith. *See, e.g., State v. Morgan,* 9 Wn. App. 757, 759–60, 515 P.2d 829 (1973) (deciding need for entrapment instruction by assuming truth of defendant's testimony). The credibility of his testimony is not for us to decide.

## II

The defense of entrapment requires proof of two elements.

(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and

(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.

RCW 9A.16.070(1). The two elements of entrapment may otherwise be referred to as "inducement" and "predisposition". *See, e.g.,* Park, *The Entrapment Controversy,* 60 Minn. L. Rev. 163, 176 (1976).

The majority apparently concedes that petitioner produced sufficient evidence to raise a jury question as to the "predisposition" element. It asserts, however, that, as a matter of law, appeals to sympathy, the only evidence offered by petitioner, can never be sufficient to prove "inducement". This broad assertion is supported by neither logic nor precedent.

Initially, it should be noted that the statute speaks only

of an actor who is "lured or induced". RCW 9A.16.070. On its face, this suggests that any inducement, perhaps even a mere request, is sufficient to prove this element of entrapment. Indeed, there is weighty authority in other jurisdictions taking precisely this position. Park, at 179–80 and authorities cited therein; *see, e.g., United States v. Sherman*, 200 F.2d 880, 883 (2d Cir. 1952) (Hand, J.). This makes the entrapment defense only slightly easier to prove, for a defendant must still show an absence of predisposition. Park, at 180–81.

Despite this authority, the courts in this state have taken what I believe to be the better approach and required that the inducement go beyond "a normal amount of persuasion" (*State v. Waggoner*, 80 Wn.2d 7, 11, 490 P.2d 1308 (1971)) and be such as can be said to constitute "undue solicitation" (*State v. Swain*, 10 Wn. App. 885, 889, 520 P.2d 950 (1974)). A defendant need not allege totally outrageous conduct, however. *State v. Keller*, 30 Wn. App. 644, 647, 637 P.2d 985 (1981).

Whether a particular inducement may be said to constitute undue solicitation must be judged on a case–by–case basis. In some cases, mere repeated badgering and begging has been held sufficient to raise a jury question. *See, e.g., State v. Keller, supra* at 648–49; *State v. Morgan, supra* at 759–60. At the very least, inducement which might convince an otherwise innocent person to commit a crime should be considered sufficient. *See* Model Penal Code § 2.10(1)(b) (Tent. Draft No. 9, 1958) (even stricter inducement test requires showing of "methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it"); Park, at 181 n.53. *See generally* Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs*, 60 Yale L.J. 1091, 1113 (1951) (purpose of entrapment defense is "to discriminate between the situational and the chronic offender").

Contrary to the majority's assertion, appeals to sympathy may constitute undue solicitation. *See, e.g., Sherman v.*

*United States,* 356 U.S. 369, 373, 2 L. Ed. 2d 848, 78 S. Ct. 819 (1958). As with other forms of inducement, the focus must be on whether the appeal to sympathy went beyond a normal amount of persuasion. *See, e.g., State v. Gray,* 69 Wn.2d 432, 434–35, 418 P.2d 725 (1966) (informer's appeal to sympathy in form of claim that no one else would sell him marijuana insufficient inducement). *State v. Swain, supra,* cited by the majority, is not to the contrary. In that case, the trial court did consider the defendant's entrapment defense and simply concluded, as trier of *fact,* that the defendant had not carried his burden of proof. *See Swain,* at 892–93. *Swain* is simply consistent with the well settled rule that the factual issue of entrapment should generally be decided by the jury. C. Whitebread, *Criminal Procedure* 566 (1980).

Here also the trier of fact should have been allowed to fully consider Mr. Smith's version of events. Mr. Smith's testimony, if believed and if supported by the informer's testimony, establishes facts not dissimilar from those in *Sherman v. United States, supra.* In that case, an informer complained of his suffering due to withdrawal from heroin and repeatedly requested the defendant, who was also being treated for addiction, to obtain narcotics for him. *Sherman,* at 371. When the defendant finally agreed and several times obtained drugs for the informer, he was charged with sales of narcotics. The Supreme Court found entrapment as a matter of law. *Sherman,* at 373.

In the present case, Mr. Smith also testified to several requests by the informer, which he initially refused, that he provide her with marijuana. He also testified as to repeated statements by the informer that her husband was dying and in great pain. Mr. Smith sought access to the informer so that she could corroborate this testimony. While the undercover officer purporting to be the informer's husband claimed he later explained to Mr. Smith that he was not dying, but only ill, he said nothing to indicate that he was not in pain. Moreover, Mr. Smith denied that the officer ever made any explanation at all.

If the facts in *Sherman* showed inducement as a matter of law, this testimony surely raises inducement as a question of fact for the jury. The story which Mr. Smith claims he was told is precisely the sort of inducement which might tempt an otherwise innocent person to violate the law. Mr. Smith's entrapment defense therefore did not fail as a matter of law and the trial court's failure to allow defense counsel to question the informer in camera cannot be said on this record to be harmless.

### III

I would not dispose of this case, however, by immediately ordering a new trial. Whether or not Mr. Smith's Sixth Amendment right to compel testimony was violated depends on whether the informer's testimony would actually have been helpful to the defense. *See, e.g., Ashley v. Wainwright,* 639 F.2d 258, 261 (5th Cir. 1981). Because of the hearing court's error, the record before us gives little indication of what the informer would testify to. I would therefore remand this case for an evidentiary hearing at which defense counsel should be allowed to question the informer directly. If evidence is adduced at the hearing which would be beneficial to the defense (*see Ashley v. Wainwright, supra* at 261), a new trial should be ordered and the informer could be subpoenaed to testify. If, on the other hand, no beneficial evidence is adduced at the hearing, a new trial is unnecessary and Mr. Smith's conviction should be affirmed.

I dissent.

WILLIAMS, C.J., and PEARSON, J., concur with UTTER, J.

Reconsideration denied May 1, 1984.