967 P.2d 985 (1998)
STATE of Washington, Respondent,
v.
Brian K. O'NEILL, Appellant.
No. 40314-1-I.
Court of Appeals of Washington, Division 1.
July 27, 1998.
*986 James E. Lobsenz, Meredith M. Rountree, Carney, Badley, Smith & Spellman, Seattle, for Appellant.
*987 H. D. Evans, Prosecuting Atty King County, King County Prosecutor/Appellate Unit, Seattle, for Respondent.
COLEMAN, Judge.
Brian O'Neill appeals his conviction for bribing a police officer to avoid having his arrest paperwork processed. He claimed entrapment. Unlike the normal entrapment case, the police officer was not advancing legitimate law enforcement objectives when he accepted O'Neill's bribe. We hold that the lower court properly declined to dismiss the prosecution for outrageous governmental behavior or for the few incidental references at trial to the police officer's religious beliefs. And while the officer acted illegally in taking the bribe, we uphold the lower court's instruction that merely affording O'Neill the opportunity to commit bribery would not be entrapment. This language was appropriate because it arises from the statutory definition of entrapment, which expressly applies to all crimes. But the lower court's instruction went further and provided that "a reasonable amount of persuasion to overcome reluctance does not constitute entrapment[.]" This sentence erroneously suggested that a corrupt police officer who illegally solicits bribes from arrestees could use reasonable persuasion. Because the State has failed to show that this instructional error was harmless, we reverse and remand for a new trial.
Darryl Stone's eight-and-a-half year career as a Seattle Police Officer ended when he pleaded guilty to federal charges of accepting bribes through extortion from O'Neill and three other people whom Stone had arrested. The federal district court imposed a ten-month sentence, with five months served in electronic home detention. The State then charged O'Neill with bribery under Washington law.
Before trial, O'Neill moved to dismiss the charge for outrageous governmental misconduct. O'Neill claimed that he should not be prosecuted given Stone's pattern of extorting illegal bribes. The lower court denied the motion, reasoning that
although in the state of Washington this is probably a shocking and unusual circumstance, by analogy, if I were to dismiss based upon Mr. Stone's plea agreement and actions and what he has admitted to, that would mean that the state probably could never charge bribery, because the officer accepted it, then it was so shocking that we would not have it.
The court concluded that the decision to charge O'Neill was better left to the prosecutor's discretion.
O'Neill then moved to suppress evidence of his statements to Stone during the bribe negotiations, arguing that they were obtained as the result of illegal conduct. The lower court also denied this motion. But it granted O'Neill's motion in limine to prohibit Stone from "describing his religious beliefs or in any way invoking religion as a way of trying to bolster his testimony[.]"
During opening statements, the prosecutor said that after taking the bribe, Stone put O'Neill's arrest paper work in his locker and "went to an early morning detail of Promise Keepers[.]" Defense counsel made no objection to the mention of Promise Keepers, a religious organization. At trial, Stone testified that he had worked a long shift the night he arrested O'Neill because traffic officers had been assigned to work a Promise Keepers event at the Kingdome. Again, O'Neill made no objection.
After explaining that he was currently serving home detention on his federal convictions, Stone mentioned that his pastor had driven him to court
[Prosecutor] I was going to ask, how did you get to court?
[Stone] My pastor.
Q. No, how because of your detention, how do you get here in court?
A. I called the monitoring people. Is that what you mean?
Q. Yes.
Defense counsel made no objection.
Stone then testified that he arrested O'Neill for driving under the influence of alcohol (DUI). Stone claimed that he read O'Neill his rights, handcuffed him, and took him to the station for a breath test. Stone also said that he told O'Neill that if he would sign a conditional release form, he would be *988 released without jail time. At the station, O'Neill tested with a blood alcohol level of .15 and .17, which are both above the legal limit. When Stone told O'Neill he was going to issue a DUI citation, O'Neill allegedly agreed to sign the release condition and call a taxi. Stone then took O'Neill down the elevator to the first floor pay phones.
According to Stone, O'Neill then asked "if there was anything that we could do to avoid this from happening." Stone testified that when he said that they were just going to call a cab, O'Neill asked how much it would take to make the DUI charge go away. When Stone expressed interest, O'Neill offered a figure. Stone admitted that he then wrote $3,500 in a phone book. After some negotiating, he and O'Neill agreed to a price of $3,000. Stone let O'Neill go and met him later to take the bribe money. Stone put O'Neill's citation in his locker and never processed it, as promised.
Stone admitted that he had also accepted bribes from three other DUI arrestees. He testified that they had each initiated the discussion of paying money to avoid prosecution. Stone said that he had been offered bribes on numerous occasions. Although over 60 unprocessed DUI citations were found in Stone's locker, he maintained that he had only accepted bribes four times.
Attempting to expose the fact that Stone's federal sentence was better than what he would have served in the State system, defense counsel asked on cross examination if Stone could watch television while serving home detention. Stone replied, "Not now. Our church is not watching TV for three days, but, yes." The prosecutor and the defense both objected to this religious reference.
Outside the presence of the jury, defense counsel moved to dismiss for Stone's order in limine violations by twice mentioning religion in his testimony. Counsel pointed to his direct testimony that his pastor drove him to court and his reply on cross examination that his church had asked its members to not watch television for a certain period of time. The court denied the motion because they were "somewhat oblique references," but it admonished Stone not to refer to religion again in any way. The court warned that if Stone could not follow its guidelines, it would dismiss or declare a mistrial.
Jacqueline Docherty then testified for the defense that when Stone arrested her for DUI, Stone initiated bribe negotiations without solicitation. According to FBI Agent Robert Farmer, who interviewed Stone after his arrest, Stone admitted initiating the bribe discussions with both Docherty and O'Neill. O'Neill's friend testified that after O'Neill was arrested, he said that the police officer had threatened him with incarceration if he did not agree to pay the bribe.
Prior to O'Neill testifying before the jury, he moved to suppress his postarrest statements. While the lower court found that Stone had not read O'Neill his rights, it concluded that O'Neill's statements during the bribe negotiations were admissible because they were not made in response to any questioning: "I don't think there is a single question relating to the driving while intoxicated, nor is there really any question at all relating to anything." The jury then returned to hear O'Neill's testimony.
In contrast to Stone's testimony, O'Neill claimed that Stone had initiated the discussions of a payoff. O'Neill testified that when they got on the elevator, Stone said it would be expensive to hire an attorney. Stone then put his finger to his lips, indicating that O'Neill should be quiet. O'Neill said that when they got off the elevator, Stone pulled him aside and wrote "$3,000" in a phone book. Feeling scared and upset, O'Neill agreed to pay the money. O'Neill testified that he had not been predisposed to try to bribe the officer, but he admitted that he did not object to Stone's proposal. He claimed that Stone induced him to pay the money with the threat of jail.
O'Neill's entire defense was that he had been entrapped. The court gave the following entrapment instruction:
Entrapment is a defense to a criminal charge if:
a) the criminal design originated in the mind of law enforcement officials or any person acting under their direction; and
*989 b) the defendant was lured or induced to commit a crime the defendant had not otherwise intended to commit.
The defense is not established if the law enforcement official(s) did no more than afford the defendant an opportunity to commit a crime. The use of a reasonable amount of persuasion to overcome reluctance does not constitute entrapment.
The burden of proof as to the defense of entrapment is on the defendant. This burden is satisfied if, based on the evidence before you, you conclude that it is more likely than not that both elements a) and b) are true.
(Italics ours.) O'Neill excepted to the text we have emphasized and proposed an instruction that omitted that language. Although the two challenged sentences were taken directly from WPIC 18.05, O'Neill argued that they applied only in a normal entrapment case, where police conduct an undercover sting operation to provide a criminal opportunity. The lower court agreed that this was an unusual case because it involved a corrupt uniformed officer agreeing to participate in a crime. But it rejected O'Neill's proposed instruction, reasoning that the defense could make its argument under the given instruction.
Both parties argued in closing that O'Neill's and Stone's credibility was a crucial determination to be made. Defense counsel then argued:
This is not the type of situation where like the sting operation where a person, a police officer, gives an individual the opportunity to commit the crime by offering to sell drugs or offering to buy drugs from a person who is a drug dealer, which is what I submit the second paragraph about just giving an opportunity to a person to commit a crime does not establish entrapment. As well it shouldn't. That's the type of sting operations we see all the time.
Counsel argued that it was absurd to think that O'Neill came up with the idea to offer a bribe given his failure to do so in past encounters with the police and Stone's admitted pattern in accepting bribes. The jury, however, found O'Neill guilty of bribery.
We first address O'Neill's argument that the lower court erred by instructing the jury that entrapment cannot be established if the law enforcement official "did no more than afford the defendant an opportunity" to commit a crime. O'Neill claims that this language is fatally ambiguous when applied to the facts of this case. O'Neill concedes that this would be a correct statement of the law in most entrapment cases. But he argues that in this unusual prosecution for bribing a known police officer who is not pursuing proper law enforcement objectives, the jury might misinterpret the word "opportunity" to include the officer's action in inviting the bribe. It would then believe that there could be no entrapment if Stone initiated the bribe discussions in this case. For reasons explained below, we hold that the lower court did not err by including the challenged sentence in its instruction
O'Neill was charged with conferring a pecuniary benefit to a public servant to prevent his arrest paperwork from being processed, in violation of the bribery statute, RCW 9A.68.010(1)(a). He pleaded entrapment under the following statute:
(1) In any prosecution for a crime, it is a defense that:
(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and
(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.
(2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.
RCW 9A.16.070. Entrapment is usually raised in cases where police induce the commission of a crime while acting in an undercover capacity. E.g., State v. Lively, 130 Wash.2d 1, 9-10, 921 P.2d 1035 (1996). The parties agree, however, that it may also be a valid defense against charges for knowingly bribing a police officer. But in the bribery context where there is no undercover operation, O'Neill argues that RCW 9A.16.070(2) and the similar second paragraph of the lower court's instruction do not apply. Because *990 the statute covers all crimes, we disagree that the "opportunity" language applies only to surreptitious sting or controlled buy operations.
The unchallenged portion of the lower court's instruction correctly states the elements of entrapment. O'Neill had to prove that the criminal design to commit bribery originated in Stone's mind and that he was lured or induced to pay the bribe even though he had not been predisposed to do so. The instruction's last paragraph plainly states that the defense is established if these two elements are met. The challenged language is thus merely an illustration to clarify or explain the application of the defense's elements. If the police officer does "nothing more than afford the defendant an opportunity" to pay a bribe, then the elements of entrapment, by necessity, are not met. This is true regardless of whether the defendant knew that the person with whom he or she committed the crime was a police officer.
O'Neill claims that the entrapment instruction is ambiguous and subject to an erroneous interpretation because there is a reasonable likelihood that the jury read the instruction to prohibit consideration of evidence relevant to the defense. See Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Specifically, O'Neill claims that the jury may have believed that it could not consider the evidence that Stone first solicited the bribe as proof of entrapment. O'Neill had an "opportunity" to pay a bribe, in the broad sense, when he was first arrested and confronted with adverse official action. If the jury decided that Stone initially asked for the bribe, it may have concluded that his offer merely made the preexisting opportunity more attractive. But contrary to O'Neill's argument, the entrapment instruction does not compel this result. The instruction allowed O'Neill to effectively argue that Stone overcame O'Neill's lack of predisposition and reluctance by soliciting the bribe and offering more than a mere opportunity to commit the crime.
We hold that the "opportunity" sentence of the lower court's entrapment instruction was not subject to an erroneous interpretation. O'Neill has failed to show that it misstated the law. The bribery statute contemplates that both parties to the crime may act illegally. RCW 9A.68.010. The entrapment statute includes the challenged "opportunity" language and unambiguously states that it is a defense in "any prosecution for a crime[.]" RCW 9A.16.070. We must presume that the Legislature meant what it said and had the crime of bribery in mind. If the Legislature had intended to carve out an exception for crimes such as bribery, it could have easily done so. The entrapment statute, including its provision that merely affording the opportunity to commit a crime is not entrapment, is unambiguous. The jury instruction's opportunity sentence correctly states the statutory defense, and O'Neill has made no showing that it is unconstitutional when applied to the facts of this case.
O'Neill also attacks the entrapment instruction's language that the "use of a reasonable amount of persuasion to overcome reluctance does not constitute entrapment[.]" While this sentence is also included in the WPIC, it does not derive from the entrapment statute, RCW 9A.16.070. We hold that this language should not have been applied on the facts of this case because it suggested that Stone could have illegally threatened incarceration to extort bribe money by using a "reasonable" amount of persuasion. Because Stone did not legitimately negotiate the bribe in an attempt to enforce the law, no amount of persuasion would have been reasonable or sanctioned by law.
An instruction's erroneous statement of the law is reversible error only if it prejudices a party. See State v. Wanrow, 88 Wash.2d 221, 237, 559 P.2d 548 (1977). Where, as here, the erroneous instruction was given on behalf of the party that prevailed at trial, the error is presumed prejudicial unless it affirmatively appears that it was harmless. Wanrow, 88 Wash.2d at 237, 559 P.2d 548. The "reasonable amount of persuasion to overcome reluctance" language is clearly designed for the typical undercover or sting operation. While perfectly appropriate in the normal entrapment case, it does not apply here.
*991 Because there is some evidence in the record to support a finding that O'Neill was reluctant to agree to a bribe once Stone raised the issue, we cannot conclude that the instructional error had no possible consequence on the jury's verdict. Cf. State v. Theroff, 95 Wash.2d 385, 391, 622 P.2d 1240 (1980) (with no evidence of self-defense presented at trial, erroneous self-defense instruction could not have affected the jury's guilty verdict). O'Neill testified that he had not been predisposed to bribe the police. Other evidence also supports this inference. Because we are not convinced that the error was harmless, we reverse and remand for a new trial.
We must next decide whether the lower court erred by failing to dismiss this case for outrageous governmental behavior. The State argues that because bribery contemplates wrongdoing by both parties, there is nothing unfair about prosecuting O'Neill even though a corrupt public official illegally accepted the bribe. Because the facts of this case are not so outrageous that they shock the universal sense of fairness, we hold that due process did not bar the State from prosecuting O'Neill for bribery.
The conduct of law enforcement officials may be so outrageous that due process principles absolutely bar the government from invoking judicial processes to obtain a conviction. See Lively, 130 Wash.2d at 18-19, 921 P.2d 1035. The police conduct must "shock the universal sense of fairness." Lively, 130 Wash.2d at 19, 921 P.2d 1035. Whether an official's conduct is sufficiently outrageous to bar prosecution is a matter of law that we review de novo. Lively, 130 Wash.2d at 19, 921 P.2d 1035. Outrageous governmental conduct will warrant dismissal only in the most egregious circumstances. Lively, 130 Wash.2d at 20, 921 P.2d 1035. Each case must be resolved on its own unique facts, bearing in mind "`proper law enforcement objectivesthe prevention of crime and the apprehension of violators, rather than the encouragement of and participation in sheer lawlessness.'" Lively, 130 Wash.2d at 21, 921 P.2d 1035, quoting People v. Isaacson, 44 N.Y.2d 511, 406 N.Y.S.2d 714, 378 N.E.2d 78, 83 (1978).
In this case, Stone was not seeking to advance any proper law enforcement objective. But we hold that a corrupt police officer's illegal acceptance of a bribe does not, by itself, preclude the State from prosecuting the briber. Nor do the other circumstances of this case cross the line of outrageous behavior that shocks the universal sense of fairness. O'Neill stresses that Stone solicited illegal bribes from intoxicated arrestees, extorting the money with coercive threats of incarceration and prosecution. He also points to the fact that Stone let O'Neill drive to get the payoff money despite his high blood alcohol levels.
While Stone's conduct was flagrant and condemnable, it was not sanctioned by the government as part of an attempt to enforce the law or punish bribery attempts. Rather, it was a private act to extort money. Stone's acts amounted to bribery, but unless he prevails on his entrapment defense, O'Neill is equally guilty of committing the crime. While there is room to debate the prosecutor's discretionary decision to charge O'Neill on the facts of this case, we hold that it is neither shocking nor unfair to prosecute him for bribery.
We next address O'Neill's challenge to the lower court's refusal to suppress his statements during the bribe negotiations with Stone. The lower court permissibly found that Stone never read O'Neill his constitutional rights. But it ruled that O'Neill's statements were admissible because they were made voluntarily during illegal negotiations rather than official interrogation. O'Neill claims that Stone's action in writing monetary figures was the functional equivalent of interrogation because it was reasonably likely to elicit an incriminating response. The State argues that prohibited custodial interrogation can occur only when the police are serving a legitimate law enforcement function. We agree with the lower court that Stone's illegal and unsanctioned negotiations with O'Neill do not constitute interrogation warranting suppression under the exclusionary rule.
Given the unchallenged finding that Stone never advised O'Neill of his rights, the *992 State could not have used any statements that O'Neill made as a result of custodial interrogation. Rhode Island v. Innis, 446 U.S. 291, 297, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "Interrogation" under this exclusionary rule is not limited to express questioning. Innis, 446 U.S. at 298-99, 100 S.Ct. 1682. It also includes any actions that the police should know are reasonably likely to elicit an incriminating response from a suspect in custody. Innis, 446 U.S. at 301, 100 S.Ct. 1682.
But the purpose of the exclusionary rule is to deter coercive police practices that force suspects to confess to crimes. That is not what occurred in this case. Stone was not acting in his official capacity when he sought O'Neill's agreement to pay a bribe. O'Neill has cited to no authority that the exclusionary rule applies when a police officer is a participant to the crime. We reject O'Neill's attempt to extend the exclusionary rule to statements made during illegal bribe negotiations.
Finally, we turn to O'Neill's claim that the lower court erred by not ordering a mistrial or a dismissal for violations of the lower court's order in limine. The pretrial order prohibited Stone from referring to religion in any way. During opening statements, the prosecutor mentioned Stone's "early morning detail of Promise Keepers[.]" And Stone testified that his pastor had driven him to court and that his church was not watching television. O'Neill argues that these religious references mandated either a dismissal or a new trial. The trial court, however, was in the best position to judge the effect of the statements on the jury. We hold that it acted within its discretion by admonishing Stone when O'Neill objected and by allowing the trial to proceed.
Turning first to the Promise Keepers reference, we hold that there was no violation of the court's order. The statement was simply not a comment on Stone's religious beliefs. Rather, the prosecutor merely said that Stone worked at a Promise Keepers event at the Kingdome the day he accepted the bribe from O'Neill. The prosecutor later touched on the event with Stone, who explained that all traffic officers were assigned to work the Kingdome event. Nothing in the record shows that anyone drew a connection between Stone's Promise Keepers duty and his personal beliefs.
By mentioning his pastor and his church on the stand, however, Stone violated the lower court's order in limine. But while governmental mismanagement and the failure to comply with court orders may trigger the trial court's power to dismiss, the decision is discretionary. See State v. Dailey, 93 Wash.2d 454, 456-57, 610 P.2d 357 (1980). Here, there was no abuse of discretion. O'Neill made no timely objection to the Promise Keepers references nor Stone's statement that his pastor had driven him to court. The failure to make a timely objection to the admission of evidence at trial precludes appellate review. E.g., State v. Florczak, 76 Wash.App. 55, 72, 882 P.2d 199 (1994). O'Neill's concession that Stone's challenged testimony was not given in response to questions about religious matters precludes his constitutional argument because Washington Constitution article 1, section 11 prohibits questions only about a witness's religious beliefs.
When counsel objected to the reference to Stone's church, the court admonished Stone to make no further references to religious matters. No further violations occurred. The trial court was in the best position to evaluate the effect of Stone's oblique references to his religion, and we hold that it acted within its discretion by denying O'Neill's requests for the extraordinary remedies of dismissal and a mistrial.
We reverse and remand for a new trial.
ELLINGTON, J., concurs.
BECKER, Judge (concurring).
I concur reluctantly. I am reluctant because I do not believe an entrapment instruction is warranted at all unless there is evidence that a law enforcement agent acted for the purpose of obtaining evidence of a crime. But this issue cannot be dispositive in the present case because neither party has *993 raised it.[1] I write separately to explain why the result in this case should not necessarily compel future trial courts to give an entrapment instruction if similar facts should ever arise again.
Where the evidence is insufficient, no entrapment instruction should be given.[2] As our Supreme Court recognized in State v. Berry, the basic idea of the entrapment doctrine "is that the acts done by officers of the law to induce its violation must be done for the purpose of arrest and the prosecution of the violator.[3]
Here, while Stone may have induced O'Neill to offer a bribe, clearly it was not for the purpose of arresting and prosecuting O'Neill for bribery. As Judge Coleman's primary opinion states, "Stone was not seeking to advance any proper law enforcement objective." His conduct was a "private act to extort money".[4]
The Washington bribery statute[5] makes no distinction in culpability between a public servant and a citizen, or between the person who first suggests the transaction and the person who goes along with it. Stone and defendant O'Neill were equally culpable in the present case. Both were principals and accomplices to the crime of bribery. As in Berry, it is immaterial to the availability of the entrapment defense that it may have been Stone, the police officer, who first suggested the crime.
According to State v. Smith,[6] the defendant "must demonstrate that he was tricked or induced into committing the crime by acts of trickery by law enforcement agents." O'Neill has not shown an act of trickery on the part of Stone. The officer in Smith pretended to be dying until the defendant provided him with marijuana. The dying man then miraculously transformed himself into a policeman "as the frog became a prince".[7] Stone underwent no such transformation. He was in reality exactly what he appeared to bea corrupt policeman.[8]
Our majority opinion holds that O'Neill is equally guilty of committing the crime "unless he prevails on his entrapment defense".[9] I submit that O'Neill does not really have an entrapment defense to prevail on. That we permit him to try again for an acquittal with the benefit of a modified entrapment instruction is, in my opinion, the result of the State's waiver of an appropriate objection. It should not be viewed as a substantive development of the law.
NOTES
[1] RAP 12.1(a).
[2] See State v. Gray, 69 Wash.2d 432, 435, 418 P.2d 725 (1966); State v. Waggoner, 80 Wash.2d 7, 10-11, 490 P.2d 1308 (1971).
[3] State v. Berry, 200 Wash. 495, 517-518, 93 P.2d 782 (1939) (emphasis added). See also Charles E. Torcia, Wharton's Criminal Law § 53, at 349 (15th ed. 1993), (defense of entrapment made out when officer or agent induces a normally law-abiding person to commit a crime "so that evidence may be obtained for his prosecution.")
[4] Majority at 991.
[5] RCW 9A.68.010, the Washington statute defining "bribery", provides:

(1) A person is guilty of bribery if: (a) With the intent to secure a particular result in a particular matter involving the exercise of the public servant's vote, opinion, judgment, exercise of discretion, or other action in his official capacity, he offers, confers, or agrees to confer any pecuniary benefit upon such public servant; or (b) Being a public servant, he requests, accepts, or agrees to accept any pecuniary benefit pursuant to an agreement or understanding that his vote, opinion, judgment, exercise of discretion, or other action as a public servant will be used to secure or attempt to secure a particular result in a particular matter.
(2) It is no defense to a prosecution under this section that the public servant sought to be influenced was not qualified to act in the desired way, whether because he had not yet assumed office, lacked jurisdiction, or for any other reason.
[6] State v. Smith, 101 Wash.2d 36, 677 P.2d 100 (1984).
[7] State v. Smith, 101 Wash.2d at 45, 677 P.2d 100 (Utter, J., dissenting).
[8] See Wayne R. LaFave & Austin W. Scott, Handbook on Criminal Law § 5.2, 420-21 (2d ed. 1986) (defense of entrapment arose in response to legitimate concerns about police practices that "simulate reality" in order to present the suspect with an opportunity to commit the crime.).
[9] Majority at 991.