[No. 42528-5-I.    Division One.    July 19, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. NEGASH ATSBEHA, *Appellant*.

*Shauna Claire O'Connor* and *Eric Broman* of *Nielsen, Broman & Associates, P.L.L.C.*; and *Colby Haase, Legal Intern*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Ann M. Foerschler, Deputy*, for respondent.

KENNEDY, C.J. — After the State charged him with unlawful delivery of a controlled substance and, in the alternative, possession of a controlled substance with intent to deliver, Negash Atsbeha sought to call an expert witness who would testify that his organic brain damage, major depression, and gambling, alcohol, and cocaine problems impaired his ability to form the requisite criminal intent. The trial judge concluded that the expert's testimony was not relevant to Atsbeha's diminished capacity defense and excluded it. The jury convicted Atsbeha of possession with intent to deliver. We reverse and remand for a new trial because the expert's proffered testimony was material and relevant to Atsbeha's diminished capacity defense.

## FACTS

On March 28, 1996, Negash Atsbeha gave King County Sheriff's Department Detective Michael Caldwell, who was working undercover, one-sixteenth of an ounce of cocaine. Detective Caldwell arrested Atsbeha, and the State charged

him with unlawful delivery of cocaine and, in the alternative, possession of cocaine with intent to deliver.

## Pretrial Testimony

Before trial, Atsbeha proffered expert testimony of Dr. Mary Hodgson Rose, Atsbeha's family physician since 1986, to support a diminished capacity defense. Dr. Rose earned her undergraduate and medical degrees from Stanford University, and then trained in family medicine at Vancouver General Hospital in British Columbia, Canada. She is board certified in family medicine and is a clinical faculty member at the University of Washington. At the time she testified, Dr. Rose provided primary care and care for more complex illnesses to patients in Seattle neighborhoods. The trial judge found that Dr. Rose qualified as an expert based on her training and experience.

Dr. Rose testified that Atsbeha contracted a skin infection with syphilis when he was a child in Ethiopia. Atsbeha was a highly educated individual and a major leader in the community before 1986, when this illness "created an increasing amount of mental and physical impairment[,]" including organic brain damage, that resulted in, inter alia, poor mental functioning and slurred, confused speech. Report of Proceedings at 7 (Feb. 17, 1998). Dr. Rose described this condition as "syphilitic encephalopathy," which is "an infection of the brain tissues [that] causes both dysfunction and destruction of cells. It particularly affects the frontal lobes that control reasoning and judgment, and the posterior columns of the spinal cord that control gait and balance. But it affects all parts of the nervous system[.]" *Id.* at 10-11. Dr. Rose testified that between 1986 and 1996, Atsbeha's personal and career life completely collapsed; he began to suffer from major depression, had trouble with gambling, and abused alcohol and cocaine.

Although Atsbeha did not formally visit Dr. Rose during the three months before his March 1996 contact with Detective Caldwell, Dr. Rose and Atsbeha spoke on the

phone and in the waiting room of her office during these months. Dr. Rose described Atsbeha's behavior during this time as chaotic and confused:

> Because of his chaotic behavior at that point, he missed many appointments, he didn't respond to phone calls, he was very confused when we did try to talk to him, and I often didn't understand what he was saying. At times he was intoxicated, at times he was acutely anxious and depressed to the point where his thinking was very unclear for me.

*Id.* at 20. In April 1996, shortly after his contact with Detective Caldwell, Atsbeha visited Dr. Rose in her office. Dr. Rose described Atsbeha's mental impairment at this time as "considerable" but "less so than during March." *Id.* at 21.

After Atsbeha's attorney defined intent as "acting with the objective or purpose to accomplish a result which constitutes a crime[,]" Dr. Rose opined "with a reasonable degree of medical certainty that his ability to form this intent was impaired, was diminished in March of 1996[.]" Report of Proceedings at 29 (Feb. 18, 1998).

On cross-examination, the prosecutor asked Dr. Rose, "[I]f someone were to ask him to perform a simple task, hypothetically, of going and getting something and bringing it back to that person, could he form the specific intent in May of 1996?" *Id.* at 8. Dr. Rose responded that Atsbeha "could form the mental action plan if the action was immediate . . . [b]ut not probably if it was delayed." *Id.* at 8; *see also id.* at 21 (responding to the same hypothetical with respect to late March 1996: "I think it is very likely he could[.]"); *id.* at 33 ("As long as it was in the short-term, yes, he could have done that."); *id.* at 34 (same). She also testified that although Atsbeha's condition would not interfere "[i]n a highly structured situation where he was asked to do a task right away, . . . [i]n a free form situation, in the real world, it would have interfered." *Id.* at 13-14. When asked the question in another form, she responded, "I believe he would have been able to respond to

a request to buy something and give it to another person." *Id.* at 23.

At the conclusion of Dr. Rose's proffered testimony, the trial judge stated that "while the defendant does have a mental disorder, . . . [Dr. Rose] cannot say that he had the inability to form the specific intent." *Id.* at 36. The judge noted that although a person's ability to form intent may be "reduced a little bit," this does not constitute "the inability to form the intent." *Id.* at 43. Further, she concluded that Atsbeha's condition "is what I would find to be insanity[,]" not diminished capacity. *Id.* at 42. But Atsbeha did not submit an insanity defense. The judge stated, "[T]here is no evidence that we have before us that [Atsbeha] lacked the specific intent to be able to deliver an object from one person to another" and "[t]here is nothing here that indicates that he was intoxicated at the time." *Id.* at 40-41. Accordingly, she concluded that Dr. Rose's proffered testimony did not meet the requirement for diminished capacity and excluded it.

## Trial Testimony

During trial, Atsbeha testified that he had syphilis, and was physically and mentally distraught. He also stated that he was addicted to alcohol and cocaine, was depressed, and gambled compulsively. Atsbeha testified that on March 28, 1996, Detective Caldwell approached him and asked him to help catch a "main" drug dealer. Atsbeha stated that Detective Caldwell knew he was an addict and offered him cocaine in exchange for his assistance. Atsbeha purchased cocaine from the drug dealer, and Detective Caldwell took it from him. Police cars arrived and, to Atsbeha's surprise, Detective Caldwell arrested Atsbeha. Atsbeha maintained that Detective Caldwell selected him to work as an informant, knowing Atsbeha was vulnerable because of his addictions, and then entrapped him.

By contrast, Detective Caldwell testified that he did not approach Atsbeha about working as an informant until

*after* Atsbeha was arrested for this offense. Detective Caldwell stated that he asked Atsbeha if he had any "stuff," and that Atsbeha asked him if he wanted marijuana or cocaine. Then, according to Detective Caldwell, Atsbeha called "a connection," took $80 from Detective Caldwell, purchased cocaine, and handed the cocaine to Detective Caldwell. Detective Caldwell then identified himself and arrested Atsbeha. At the police station, Detective Caldwell "told [Atsbeha] that it was possible in these situations to work off this charge if he is willing to be an informant." Report of Proceedings at 78 (Feb. 18, 1998). Nonetheless, Detective Caldwell asserted that Atsbeha never worked as an informant for him.

A jury convicted Atsbeha of possession of a controlled substance with intent to deliver, and he appeals.

## DISCUSSION

Atsbeha contends that the trial judge deprived him of his constitutional right to present a defense by excluding Dr. Rose's expert testimony that his ability to form intent was impaired by syphilis, depression, and substance abuse.

"Diminished capacity is a mental condition not amounting to insanity which prevents the defendant from possessing the requisite mental state necessary to commit the crime charged." *State v. Warden*, 133 Wn.2d 559, 564, 947 P.2d 708 (1997); *see also* RCW 9A.12.010(1) (defining insanity as the inability to perceive the nature of the act or identify right from wrong). "Admissibility of evidence lies within the sound discretion of the trial court and the court's decision will not be reversed absent abuse of that discretion." *State v. Hamlet*, 133 Wn.2d 314, 324, 944 P.2d 1026 (1997). But criminal defendants have a constitutional right to present material and relevant testimony in their defense. *State v. Smith*, 101 Wn.2d 36, 41, 677 P.2d 100 (1984); *State v. Roberts*, 80 Wn. App. 342, 350-51, 908 P.2d 892 (1996).

A trial judge's decision to exclude expert testimony

is based on ER 702, 401, and 402. *State v. Ellis*, 136 Wn.2d 498, 521, 963 P.2d 843 (1998) (declaring that the *Edmon*[1] foundational requirements are not absolute and not controlling).[2] ER 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." And under ER 401 and 402, all relevant evidence, i.e., "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence[,]" is admissible. If the trial court allows the testimony of a defense expert, "its weight and value would then be determined by the trier of fact, the jury, under proper instructions[.]" *Ellis*, 136 Wn.2d at 521 (footnote omitted).

In this case, the only issue is whether Dr. Rose's testimony was material and relevant to the question of whether "a mental disorder . . . impaired the defendant's ability to form the specific intent to commit the crime charged." *Id.* at 521. The elements of possession of a controlled substance with intent to deliver under RCW 69.50.401(a)(1)(i) are "(1) unlawful possession (2) with intent to deliver (3) a controlled substance[.]" *State v. Hagler*, 74 Wn. App. 232, 235, 872 P.2d 85 (1994). "A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1).

This court has modified the traditional rule that only specific intent can be negated by evidence of diminished

---

[1]*State v. Edmon*, 28 Wn. App. 98, 102-03, 621 P.2d 1310 (1981) *limited by Ellis*, 136 Wn.2d at 522-23. The trial court made the decision to exclude Dr. Rose's testimony in the instant matter under *Edmon*, *Ellis* not yet having been decided.

[2]In his dissenting opinion in *Ellis*, Justice Talmadge avers that "the test for diminished capacity set forth in *State v. Edmon*, 28 Wn. App. 98, 621 P.2d 1310 (1981), is no longer applicable." *Ellis*, 136 Wn.2d at 525 (Talmadge, J., dissenting). Because *Ellis* parallels *Edmon* on the issues before us in this case, we need not decide whether the nine *Edmon* factors have any continuing utility.

capacity "because RCW Title 9A was designed to replace concepts like specific and general intent with the four levels of culpability in RCW 9A.08.010." *State v. Edmon*, 28 Wn. App. 98, 103-04, 621 P.2d 1310 (1981), *limited on other grounds by Ellis*, 136 Wn.2d at 522-23. A trial court should not exclude expert testimony regarding a defendant's mental disorder based on the distinction between general and specific intent:

> The concept of specific intent involves an intent in addition to the intent to do the physical act. *State v. Nelson*, 17 Wn. App. 66, 561 P.2d 1093 (1977). Thus, an intent to produce a certain result from the act would be specific intent. The fine distinction between the intent to produce a result (specific intent) and the awareness of a result of one's conduct (knowledge) should not determine the admissibility of expert medical evidence of a mental disability caused by a mental disorder.

*Edmon*, 28 Wn. App. at 104.

In this case, if Atsbeha believed that he was helping the police capture a "main" drug dealer, that belief—even though irrationally formed because of the very nature of his profound disorder—would indeed negate specific intent, that is, acting with the objective to produce a result that constitutes a crime, even though Atsbeha could, according to Dr. Rose, respond to a request to do a physical act, that is, to buy something and give it to another person right away. Atsbeha proffered the testimony of Dr. Rose, and the trial judge found that she qualified as an expert. *See* ER 702 ("[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."), *cited in Ellis*, 136 Wn.2d at 523; *Edmon*, 28 Wn. App. at 102 ("The expert is qualified to testify on the subject[,]" personally diagnosed the defendant "and is able to testify to an opinion with reasonable medical certainty."). Dr. Rose's testimony tended to make it more probable that Atsbeha's ability to form specific intent—as distinguished from his ability merely to respond to a request to perform a physical act within a short period of time—was considerably impaired in March 1996 due to a mental disorder not amounting to

insanity. *See Ellis*, 136 Wn.2d at 523; *Edmon*, 28 Wn. App. at 103 ("The mental disorder must substantially reduce the probability that the defendant formed the alleged intent."). This testimony would assist the trier of fact to determine whether it is more or less probable that Atsbeha suffered from diminished capacity, i.e., a mental condition that prevented him from acting with the objective or purpose to deliver a controlled substance that he unlawfully possessed. *See* ER 401, 402, 702. We thus conclude that Dr. Rose's testimony was material and relevant to Atsbeha's diminished capacity defense and, accordingly, the trial judge erred in excluding it.

Reversed and remanded for a new trial.

A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it so ordered.

BECKER and APPELWICK, JJ., concur.

Review granted at 140 Wn.2d 1001 (2000).