[No. 16045-1-I.   Division One.   December 20, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT C. LODGE, *Appellant.*

*Doherty & Levy* and *Gilbert H. Levy,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ricardo S. Martinez, Deputy,* for respondent.

SWANSON, J.—Robert C. Lodge appeals his conviction and sentence for possession with the intent to distribute obscene material involving minors engaged in sexually explicit conduct, a violation of RCW 9.68A.030 (repealed 1984). He asserts several trial court errors.

On May 31, 1983, a search warrant issued by a Seattle

District Court judge was executed at Lodge's Seattle residence. The warrant was based upon Seattle Police Detective Thomas Dittmar's affidavit, which contained the following information. In May 1983, Detective Dittmar attended an FBI seminar on children's sexual exploitation, where he learned that since the passage of strict federal laws governing the sale of child pornography, pedophiles in the United States had developed a well organized network for the exchange of child pornography. At the seminar Detective Dittmar met two persons who had knowledge of child pornography activities in this state.

First Detective Dittmar met Detective William Dworn of the Los Angeles Police Department's sexually exploited child unit, who told Detective Dittmar that he was conducting a child pornography undercover investigation and was corresponding under the assumed name of Pete Davis with a Bob Lodge of 4143 32nd Avenue S.W., Seattle, Washington, who was a teacher. Detective Dworn gave Detective Dittmar a copy of a May 1, 1983 letter that he had received from Lodge, which letter was summarized in and attached to Detective Dittmar's affidavit. Detective Dittmar verified that a Bob Lodge, who lived at 4143 32nd Avenue S.W. in Seattle, was a schoolteacher.

Next, Detective Dittmar met Jay Howell, Chief Counsel for the United States Senate Investigations and General Oversight Committee, who had been in contact with Mervyn Cross, a convicted child molester who was serving a 15-year sentence in Florida. Cross had told Howell that he had formed a corporation which was a front for child pornography and of which Lodge was an officer and the distribution center for the child pornography photographs. When Detective Dworn had arrested Cross in California in 1978, Lodge was on Cross' child pornography mailing list. Moreover, in the past Cross had supplied to Detective Dworn reliable information that had resulted in individuals' convictions for children's sexual exploitation.

During a search of Lodge's residence pursuant to the warrant, a large quantity of sexually explicit material

involving children was seized. Lodge was charged with three counts of RCW 9.68A violations. Lodge's pretrial request for an evidentiary hearing on the intentional or reckless inclusion in the search warrant affidavit of allegedly false information was denied, as was his pretrial motion to suppress the evidence seized pursuant to the warrant.

The trial court found that Lodge knowingly possessed large numbers of obscene photographs depicting children engaged in sexually explicit conduct with the intent to distribute this material by trading it for similar material. The court further found that Lodge did not receive and did not intend to receive commercial consideration for distributing this material but that former RCW 9.68A.030 prohibited, without the need for commercial consideration, the mere possession of such material with the intent to distribute it to others. Lodge was found guilty of possessing with the intent to distribute obscene material involving minors engaged in sexually explicit conduct[1] and was sentenced accordingly.

The issues raised in this appeal are (1) whether the trial court erred in denying the defendant's request for an evidentiary hearing on the truthfulness of the search warrant affidavit's statements, (2) whether the intent to receive commercial consideration is an element under former RCW 9.68A.030 of possession with the intent to distribute obscene, sexually explicit matter involving a minor, (3) whether former RCW 9.68A.030 is violative of the equal protection clause or void for vagueness, and (4) whether the trial court abused its discretion in denying the defense motion to compel the attendance of an out–of–state witness.

The first issue is whether the trial court erred in denying the defense request for an evidentiary hearing on

---

[1]The other two counts with which Lodge was charged were dismissed after the impaneling of the jury and at the conclusion of the State's case, respectively, and Lodge thereafter waived his jury trial right, rested his case, and agreed to permit the trial court to render judgment based upon stipulated facts and the evidence adduced during the presentation of the State's case.

the search warrant affidavit. The United States Supreme Court has held that where a

> defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware,* 438 U.S. 154, 155–56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), *quoted in State v. Cord,* 103 Wn.2d 361, 366–67, 693 P.2d 81 (1985).[2] If at the hearing the defendant establishes his allegations of perjury or reckless disregard by a preponderance of the evidence, the material misrepresentations will be stricken from the affidavit. If the affidavit's remaining content is insufficient to establish probable cause, the search warrant will be held void and the evidence seized pursuant to the warrant excluded. *Franks,* at 156; *Cord,* at 367.

The Supreme Court has set forth the nature of the preliminary showing necessary to evoke the constitutional right to an evidentiary hearing on the search warrant affidavit:

> To mandate an evidentiary hearing, . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an *offer of proof.* They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is per-

---

[2] While the parties indicate that a division exists within the state appellate court as to the requisite showing for an evidentiary hearing on the search warrant affidavit, the Washington Supreme Court has adopted the test in *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). *See State v. Cord,* 103 Wn.2d 361, 366–67, 693 P.2d 81 (1985); *State v. Seagull,* 95 Wn.2d 898, 908, 632 P.2d 44 (1981).

mitted today is only that of the affiant, not of any non-governmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

(Footnote omitted.) *Franks,* at 171–72.

Lodge contends that he made the requisite preliminary showing of the falsity of affidavit statements[3] and that if the allegedly false affidavit information attributed to Cross were excluded, the remaining information does not provide probable cause for issuance of the search warrant. We disagree with the appellant's contention and conclude that the trial court did not err in denying Lodge's request for an evidentiary hearing on the warrant affidavit, for even if Lodge did make the requisite preliminary showing and the challenged affidavit information attributed to Cross were excluded, the remaining affidavit information is sufficient to establish probable cause.

For a search warrant's issuance to be based on probable cause, the supporting affidavit must set forth sufficient facts to lead a reasonable person to conclude that a probability exists that the defendant is involved in criminal activity. *Cord,* at 365. A search warrant affidavit may be based upon the affiant's personal knowledge or upon hearsay information. *Aguilar v. Texas,* 378 U.S. 108, 114, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *State v. Lair,* 95 Wn.2d 706, 709, 630 P.2d 427 (1981); CrR 2.3(c).

Here Detective Dittmar's search warrant affidavit con-

---

[3]The following allegations in Detective Dittmar's search warrant affidavit were claimed in the defense counsel's affidavit supporting the motion to suppress evidence to have been denied by Mervyn Cross in an interview with the defense counsel:

The corporation [Viewfinder] is a front for child pornography, and suspect Bob LODGE is the distribution center for the child porno photos taken. Informant Cross advised that suspect Bob LODGE also maintains the files and mailing information . . .

tained verified information that the informant, Cross, was a convicted child molester who had been arrested in California for child pornography distribution and that in the past Cross had supplied to Detective Dworn information that had resulted in 10 individuals' arrests and convictions for children's sexual exploitation. Moreover, according to Detective Dittmar's affidavit, Detective Dworn had informed him that when Cross had been arrested in California in 1978, Lodge's name was on Cross' child pornography mailing list. A magistrate making a probable cause determination for a search warrant's issuance may rely upon a police officer's affidavit or testimony that relays hearsay information from other officers. *State v. Patterson,* 37 Wn. App. 275, 277–78, 679 P.2d 416, *review denied,* 103 Wn.2d 1005 (1984).

In this case even if the affidavit information attributed to Cross were excluded, probable cause to issue the search warrant was supplied by the above information coupled with the affidavit information regarding the contents of Lodge's letter to Detective Dworn, who corresponded with Lodge under an assumed name during an undercover child pornography investigation. In this letter, which was appended to the affidavit and incorporated by reference, Lodge stated that he was a schoolteacher who was "fairly active in photography" and had about 15,000 to 20,000 negatives and a fair amount of "European material" although "as you know acquisition has been difficult lately." In addition, the letter stated, "In the past two years I made some contacts that may eventually lead to some good models." The letter further stated that Lodge lived alone so that mail "of any type" was "safe" at his address, but if the letter recipient had any apprehensions, Lodge had a post office box number, which number was set forth. The affidavit contained sufficient facts to support a probable cause determination for the search warrant's issuance.

Next, Lodge was convicted of possession with the intent to distribute obscene material involving minors engaged in sexually explicit conduct under RCW 9.68A.030 (repealed

1984), which states in part:

A person who knowingly sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state *possesses,* prepares, publishes, or prints *with intent to distribute, sell, or exhibit to others for commercial consideration,* any visual or printed matter which is obscene, knowing that the production of such matter involves the use of a minor engaged in sexually explicit conduct and that the matter depicts such conduct, is guilty of a Class C felony.

(Italics ours.)

Lodge claims that he was wrongfully convicted because former RCW 9.68A.030 requires commercial consideration to be an element of the crime of possession with the intent to distribute and the trial court expressly found that while Lodge possessed large amounts of child pornographic photographs with the intent to distribute them by trading them for similar material, Lodge did not receive or intend to receive commercial consideration for distributing the material. The question is whether commercial consideration is an element of the crime of which Lodge was convicted.

■ In interpreting a statute like that at issue here, and assuming that it is ambiguous, the court must ascertain and give effect to the legislative intent and purpose as expressed in the act as a whole. *Condit v. Lewis Refrigeration Co.,* 101 Wn.2d 106, 110, 676 P.2d 466 (1984); *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 121, 641 P.2d 163 (1982). Further, penal statutes are to be strictly construed so that activities not intended to be included within the statutory ambit shall not be prosecuted. Nevertheless, the court will not construe a statute in a forced, narrow, or overly strict manner so as to defeat the obvious legislative intent. *State v. Clark,* 96 Wn.2d 686, 690, 638 P.2d 572 (1982).

■ Here the Washington child pornography statute evinces the overriding governmental concern for the physiological, emotional and mental health of the children involved. *State v. Shuck,* 34 Wn. App. 456, 460, 661 P.2d 1020 (1983). An examination of the statute in its entirety

supports the interpretation that under former RCW 9.68A-.030 commercial consideration is an element of only possession with the intent to *exhibit* child pornography, which interpretation gives effect to the statutory purpose of protecting children against sexual exploitation.

First, RCW 9.68A.020(1)[4] (repealed 1984) makes illegal the employment, use, or inducement of minors to engage in sexually explicit conduct with the knowledge that such conduct will be photographed or displayed for "commercial use." RCW 9.68A.010(1) (repealed 1984) defines "commercial use" as "to sell, barter, trade, or otherwise exchange for consideration." Thus the Child Pornography Act of 1980 reveals the intent to proscribe the use of minors in sexually explicit acts where the results will be used for barter or trade as well as sold. It would therefore be anomalous for former RCW 9.68A.030 to be construed to ban only the possession with the intent, for a commercial consideration, to distribute, sell or exhibit child pornography but not the possession with the intent to distribute such materials for other similar materials in a barter or trade.

■ Support for this interpretation of former RCW 9.68A.030 is found in the first part of this provision, which prohibits a person from knowingly having child pornography sent or brought into this state "for sale or distribution," not for sale or distribution for a commercial consideration. This language suggests that commercial consideration was not intended to be required where child pornography is distributed. Further, if "commercial consideration" were construed to modify all of the verbs in the phrase, "intent to distribute, sell, or exhibit," a redundancy

---

[4]RCW 9.68A.020 (repealed 1984) provides in part:

"A person who:

"(1) Knowing that such conduct will be photographed or displayed for commercial use, employs, uses, persuades, induces, entices, or coerces a minor to engage in sexually explicit conduct; or

"(2) Being a parent, legal guardian, or person having custody or control of a minor, knowingly permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or displayed for commercial use;

"is guilty of a Class B felony."

occurs in the phrase, "to sell for commercial consideration." Whenever possible a statute is construed so that no portion is superfluous. *In re Marriage of Gimlett,* 95 Wn.2d 699, 703, 629 P.2d 450 (1981). Moreover, where no contrary intention appears, qualifying words and phrases in a statute refer to the last antecedent. *Caughey v. Employment Sec. Dep't,* 81 Wn.2d 597, 602, 503 P.2d 460, 56 A.L.R.3d 513 (1972); *State v. Bureau,* 8 Wn. App. 622, 626 n.4, 509 P.2d 105, *review denied,* 82 Wn.2d 1007 (1973).

Further support for this interpretation of former RCW 9.68A.030 is that the proscription against the possession with the intent to exhibit child pornography for a commercial consideration appears to have been intended to ban the "exhibition or performance" of child pornography motion pictures[5] for a commercial consideration, with a qualified exception for a projectionist's acts done within the scope of employment. RCW 9.68A.030[6] (repealed 1984). Thus the exhibition that is proscribed under former RCW 9.68A.030 appears to have been contemplated to occur in a commercial place of showing so that construing "commercial consideration" to refer only to the intent to exhibit and not to distribute is consonant with the purpose underlying the statutory scheme.

■■ Moreover, former RCW 9.68A.030 is not violative of the equal protection clause or void for vagueness. Lodge first argues that if commercial consideration is an element

---

[5] The definition of "visual or printed matter" under RCW 9.68A.010(6) (repealed 1984), which included motion pictures and video tapes, was changed in 1984 to photographs or materials containing photographic reproductions, RCW 9.68A.011(2).

[6] RCW 9.68A.030 (repealed 1984) provides in part:
"This section does not apply to acts which are an integral part of the exhibition or performance of the motion picture when such acts are done within the scope of employment by a motion picture operator or projectionist employed by the owner or manager of a theater or other place for the showing of motion pictures, unless the motion picture operator or projectionist has a financial interest in such theater or place wherein employed or unless the operator or projectionist caused to be performed or exhibited the performance or motion picture without the consent of the manager or owner of the theater or other place of showing."

of only possession with the intent to exhibit, not distribute, child pornography, then the statute violates the equal protection clause by treating "distributors" and "exhibitors" differently without a rational basis for the distinction. We disagree.

Equal protection of the law under the state and federal constitutions requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. *State v. Hall,* 104 Wn.2d 486, 493, 706 P.2d 1074 (1985); *Harmon v. McNutt,* 91 Wn.2d 126, 130, 587 P.2d 537 (1978). Where a penal statute is involved, the Washington Supreme Court recently applied, without discussion, the minimum scrutiny rational basis equal protection test. *Hall.* However, in a prior criminal case involving physical liberty and a classification based upon wealth, the court had applied an intermediate level of scrutiny, which requires that the challenged law further a substantial State interest. *State v. Phelan,* 100 Wn.2d 508, 512–14, 671 P.2d 1212 (1983); *see State v. Ham,* 39 Wn. App. 7, 9, 691 P.2d 239 (1984); *In re Blair,* 38 Wn. App. 670, 673, 688 P.2d 532 (1984). Under either test, former RCW 9.68A.030 is constitutional.

The Child Pornography Act was intended to protect children against sexual exploitation, *Shuck,* by punishing persons who possess, prepare, publish, or print child pornography with the intent to distribute, sell, or exhibit for a commercial consideration this material to others. Former RCW 9.68A.030. Evidence of the governmental concern in this area is the legislative finding in the 1984 Sexual Exploitation of Children Act (which replaced the 1980 Child Pornography Act) that an objective of "surpassing importance" is to prevent children's sexual exploitation and abuse by those who seek "commercial gain or personal gratification" from such exploitation. RCW 9.68A.001. Requiring commercial consideration to be an element of possession with the intent to exhibit, but not to distribute child pornography under former RCW 9.68A.030 has a rational relation to the Act's purpose to punish those who

benefit directly from child pornography, whether by receipt of a commercial consideration through sales or exhibitions or by receipt of similar material through distribution by means of a barter or trade; moreover, the advanced state interest is substantial. The statute survives Lodge's equal protection challenge under either test.

Next, former RCW 9.68A.030 is not unconstitutionally vague. A statute is void for vagueness if it fails to provide (1) fair notice to persons of common intelligence of the prohibited conduct and (2) ascertainable standards for adjudication to prevent arbitrary enforcement and convictions. *State v. Campbell,* 103 Wn.2d 1, 26, 691 P.2d 929 (1984), *cert. denied,* 105 S. Ct. 2169 (1985); *State v. Richmond,* 102 Wn.2d 242, 243–44, 683 P.2d 1093 (1984). Here when the statute is read in its entirety, it is not vague. Reading the definitional section as well as former RCW 9.68A.020 and 9.68A.030 together, a reasonable person would be put on notice as to what conduct is prohibited. *State v. Parker,* 97 Wn.2d 737, 741, 649 P.2d 637 (1982).

Last, we find no abuse of discretion in the trial court's denial of the defense motion to compel the attendance of an out–of–state witness. RCW 10.55.060 provides in part:

> If any person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state, is a material witness either for the prosecution or for the defense, in a criminal action pending in a court of record in this state, or in a grand jury investigation which has commenced or is about to commence, a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. Said certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

The trial court denied the defense motion pursuant to RCW 10.55.060 to compel the attendance at the Washing-

ton State proceedings of Jay Howell, Chief Counsel for the United States Senate Investigations and General Oversight Committee, because of the defendant's insufficient showing as to the materiality of Howell's proposed testimony.

The issuance of a certificate to compel the attendance of an out–of–state witness is within the trial court's discretion. The party requesting court assistance in procuring a witness has the burden of showing that the witness is material; the mere assertion of materiality is insufficient. *State v. Etheridge,* 74 Wn.2d 102, 112, 443 P.2d 536 (1968).

Here Lodge's claimed basis for the certificate's issuance was that the informant, Cross, denied conveying to Howell the information regarding Lodge that was attributed to him in the search warrant affidavit so that Howell's testimony was critical as to whether the affiant, Detective Dittmar, intentionally or recklessly included false information in the warrant affidavit. However, Lodge conceded that he had not even contacted Howell to determine whether Howell would in fact deny having provided the information at issue to the affiant. Thus Lodge failed to make a sufficient showing of materiality, and the trial court did not abuse its discretion in denying the defense motion to compel Howell's attendance as a witness. *Etheridge.*

The judgment is affirmed.

COLEMAN and GROSSE, JJ., concur.

Reconsideration denied January 23, 1986.

Review denied by Supreme Court May 6, 1986.