Affirmed.

KURTZ, C.J., and SCHULTHEIS, J., concur.

[No. 22110-1-II.    Division Two.    March 24, 2000.]
THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER
GAINES WIMBISH, *Appellant*.

*Sean P. Wickens* of *Sverre O. Staurset, P.S.*, for appellant
(appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

ARMSTRONG, A.C.J. — Christopher Wimbish appeals his conviction for one count each of second degree child molestation, intimidating a witness, and bribing a witness. He contends that the trial court erred in (1) denying his motion to compel the attendance of three out-of-state witnesses under the Sixth Amendment and RCW 10.55.060, and (2) admitting evidence of prior bad acts under ER 404(b). Wimbish also argues that he was denied a fair trial because the errors were cumulative. We affirm.

## FACTS

Christopher Wimbish was charged with four counts of first degree child rape of his daughter, S. In the alternative, he was charged with child molestation in the first or second degree. RCW 9A.44.083; RCW 9A.44.086. He was also charged with first degree child molestation of his stepdaughter, T., and one count each of intimidating and bribing a witness. RCW 9A.72.110; RCW 9A.72.090. A jury convicted Wimbish of one count of second degree child molestation of S., one count of intimidating a witness, and one count of bribing a witness.

S. lived with her mother in Massachusetts until she was eight years old. She then moved to Tacoma to live with her father, her stepmother (Summiya Mahdi), her half-brother, and three sisters. S. testified that the sexual abuse started when she was about nine when Wimbish held her on his lap and rubbed her chest. Similar incidents occurred as often as three times a week for the six years she lived with her father. S. was 16 at the time of trial.

S. described two specific incidents of rape. The first occurred when she was 11 years old. When she got home from school, only her father was there. He twisted her arm and told her to take off her clothes. He forced her into a bedroom and tried to put his penis inside her. He was interrupted when her brother and sisters came home from school.

S. described the incident in a note she put in her stepmother's purse, "Daddy tried to rape me last night." She also reported it to her friend, A.K., the next day. Although the stepmother talked to her father, the abuse did not stop.

The second incident occurred when S. was 13 years old. Her father was on top of her and pulled her clothes off. He choked her and told her to "shut up or you'll die." She was not able to say whether there was penetration or oral genital contact.

S. first officially reported the abuse after Mahdi filed for custody of the children. Following a fight between Wimbish and Mahdi on January 1, 1996, Mahdi took all of the children, including S., to Colorado. There, Mahdi filed a temporary restraining order against her husband. On January 8, 1996, she obtained a second restraining order that added S. But no sexual abuse was mentioned. The court ordered the Department of Social and Health Services in Colorado to investigate domestic violence.

Later that month, Mahdi petitioned for custody of S. in Colorado because of alleged "physical abuse" of the child. During the investigation in Colorado, S. reported the abuse to Nina Sokal (a counselor), Chris Radeff and Phyllis Roestenberg (two victims' advocates), a detective, a child protective services (CPS) worker, and a physician.

Because most of the investigation was conducted in Colorado, Wimbish sought to compel the attendance of numerous out-of-state witnesses under RCW 10.55, Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (Uniform Act). The court issued certificates for: the detective and CPS worker who investi-

gated the case and a doctor who performed S.'s medical examination. But Wimbish sought certificates for three additional witnesses: Sokal and the two victim advocates. The defense wanted to show that no sexual abuse was reported to these three because they apparently reported no abuse to CPS, as required by Colorado law. The defense theory was that S. and Mahdi made up the allegations of sexual abuse during a custody dispute. Wimbish's strategy was to point out inconsistencies in S.'s and Mahdi's statements about sexual abuse and to question the delayed timing of S.'s first official report.

Before trial, the defense moved to exclude evidence of prior bad acts under ER 404(b), including evidence of (1) domestic violence and physical abuse, (2) prior sexual statements made to T., (3) Wimbish's alcohol consumption, (4) racial slurs contained in a letter to Mahdi, and (5) sex videos that Wimbish watched. Preliminarily, the judge ruled that these prior acts were admissible subject to later objection at trial. At trial, over objection by defense counsel, S. testified about an incident in which her father dragged her by the hair and then cut her hair off. She also testified that her father slammed her sister, T., against a mirror, causing her to pass out. This testimony was introduced during the prosecution's case-in-chief before any testimony of sexual abuse or rape was presented.

Wimbish challenges the admission of prior bad acts under ER 404(b). Although his argument is not entirely clear, his citations to the record point to the evidence of domestic violence and physical abuse of his children. He also challenges the denial of his motion to compel the attendance of the Colorado witnesses.

## ANALYSIS
### A.   Motion to Compel Out-of-State Witnesses

Wimbish first argues that the trial court erred in denying his motion to compel the attendance of three Colorado witnesses. He argues that he has been denied his right to compulsory process and due process under both the state and federal constitutions. The State argues that Wimbish

did not meet his burden of establishing that the testimonies of Chris Radeff, Phyllis Roestenberg, and Nina Sokal were material to the defense. We agree with the State.

■ The Sixth Amendment provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." U.S. CONST. amend. VI. The federal right to compulsory process is applicable to the states through the Fourteenth Amendment. *Washington v. Texas*, 388 U.S. 14, 17-19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). The defendant's right to compel the attendance of witnesses is "in plain terms the right to present a defense." *Washington*, 388 U.S. at 19. But the Washington Supreme Court has recognized that "[a]lthough guarded jealously, the right [to compulsory process] is not absolute." *State v. Smith*, 101 Wn.2d 36, 41, 677 P.2d 100 (1984). The defendant's right to obtain witnesses in his favor applies only to witnesses who are material to the defense. *Smith*, 101 Wn.2d at 41 (citing *Washington*, 388 U.S. at 23). And, the defendant bears the burden of establishing materiality. *Smith*, 101 Wn.2d at 41.

■ But a state court's subpoena powers are limited to the state's borders.[1] For this reason, at least four states have recognized that the Sixth Amendment right to compulsory process does not require a state to secure the attendance of out-of-state witnesses.[2] *People v. Cavanaugh*, 69 Cal. 2d 262, 444 P.2d 110, 112, 70 Cal. Rptr. 438, 440 (1968); *State v. Closterman*, 687 S.W.2d 613, 620 (Mo. Ct. App. 1985); *People v. McCartney*, 38 N.Y.2d 618, 345 N.E.2d 326, 328, 381 N.Y.S.2d 855 (1976); *State v. Blount*, 200 Or. 35, 264 P.2d 419, 426, 44 A.L.R.2D 711 (1953). Both

[1]*See Minder v. Georgia*, 183 U.S. 559, 562, 22 S. Ct. 224, 46 L. Ed. 328 (1902) ("[I]t is not within the power of the Georgia courts to compel the attendance of witnesses who are beyond the limits of the state."). Defense counsel acknowledged at trial that Washington has no jurisdiction to issue a subpoena in Colorado.

[2]Although Wimbish makes no separate argument based on the state constitution and cites no authority, the same limitation would apply to compulsory process under article 1, section 22 of the state constitution. *Cf. State v. Smith*, 87 N.J. Super. 98, 208 A.2d 171, 174 (1965) (concluding that New Jersey state constitution provides no basis to compel the attendance of out-of-state witnesses).

Washington and Colorado have adopted the Uniform Act.[3]
UNIF. ACT TO SECURE THE ATTENDANCE OF WITNESSES WITHOUT A
STATE IN CRIMINAL PROCEEDINGS § 3, 11 U.L.A. 25, 27, 31
(1995). Accordingly, we review the trial court's refusal to
compel the attendance of the Colorado witnesses under
Washington's version of the Uniform Act. RCW 10.55.060;
*see McCartney*, 345 N.E.2d at 328.

▉ Before a witness can be compelled to testify in accordance with the Uniform Act, the party seeking the presence of the witness must establish that the witness' testimony is material. *State v. Etheridge*, 74 Wn.2d 102, 112, 443 P.2d 536 (1968); *State v. Lodge*, 42 Wn. App. 380, 392, 711 P.2d 1078 (1985); *State v. Sykes*, 611 S.W.2d 278, 280 (Mo. Ct. App. 1980); *Ex parte Armes*, 582 S.W.2d 434, 438 (Tex. Crim. App. 1979). "The mere assertion that witnesses are material is insufficient." *Etheridge*, 74 Wn.2d at 112 (citations omitted); *Lodge*, 42 Wn. App. at 392. Rather, the party seeking attendance of the witness must submit an affidavit or other competent evidence presenting facts to which the witness will testify. *Sykes*, 611 S.W.2d at 280-81; *Blount*, 264 P.2d at 428; *see Etheridge*, 74 Wn.2d at 112.

Only two Washington cases have addressed the issue of materiality under the Uniform Act. *See Etheridge*, 74 Wn.2d 102; *Lodge*, 42 Wn. App. 380. In *Etheridge*, the defendant was charged with grand larceny after giving a car dealer a check drawn on an account with insufficient funds. *Etheridge*, 74 Wn.2d at 103-04. Etheridge sought the attendance of three out-of-state witnesses based "only [on] the belief that their testimony would be material." *Etheridge*,

---

[3]Washington's version of the Uniform Act, RCW 10.55.060, provides in relevant part:

> If any person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions . . . in this state, is a material witness either for the prosecution or for the defense, in a criminal action pending in a court of record in this state, . . . a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. . . . This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

74 Wn.2d at 111. The trial court ruled that he failed to establish that the witnesses were material. But during trial, Etheridge was allowed to telephone two of the witnesses; neither supplied the specific information Etheridge wanted. The Supreme Court affirmed, holding that the trial court did not abuse its discretion because Etheridge failed to show that the testimony of the witnesses was material. *Etheridge*, 74 Wn.2d at 111-12.

In *Lodge*, Division One also affirmed the trial court's decision not to issue a certificate. *Lodge*, 42 Wn. App. at 392. Lodge had been arrested for intent to distribute obscene material involving minors, following execution of a search warrant at his home. *Lodge*, 42 Wn. App. at 381-82. Lodge challenged the search warrant and wanted to compel the attendance of Howell, who had supplied information in support of the warrant. *Lodge*, 42 Wn. App. at 392. The appellate court held that Lodge had not established the materiality of the testimony because "Lodge conceded that he had not even contacted Howell to determine whether Howell would in fact deny having provided the information at issue to the affiant." *Lodge*, 42 Wn. App. at 392.

Here, Wimbish argues that, if he had been allowed to subpoena the Colorado witnesses, "they would have provided even further impeaching evidence with regard to the allegations of [S]." Yet, with respect to witnesses Radeff and Roestenberg, Wimbish concedes that he does not know what S. told them. Thus, he does not know whether they would confirm or deny the allegations of sexual abuse.

With regard to Sokol, Wimbish contends that she is a material witness because she was the first person to report S.'s allegations of sexual abuse. Wimbish argues that, given the number of inconsistencies in S.'s statements, it would have been important for the defense to interview Sokol to determine what S. actually said. When asked by the court whether he had a statement from Sokol, Wimbish's attorney said, "all I have from her—I have no notes. All I have is the CPS report that she called in . . . . And that's all I have from her to go on." He also said, "I'd like to be

able to put her on the stand and find out more, get her notes, see what exactly was said."

Just as in *Lodge*, Wimbish's request to compel the attendance of out-of-state witnesses is based on his expectation that the witnesses will testify favorably to the defense. This does not satisfy the materiality requirement; Wimbish must present specific facts to which the witnesses would testify. *See Etheridge*, 74 Wn.2d at 112; *Lodge*, 42 Wn. App. at 392. The trial court did not abuse its discretion in denying the defendant's request to compel the attendance of these witnesses. *See Etheridge*, 74 Wn.2d at 112; *Lodge*, 42 Wn. App. at 392.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN and HUNT, JJ., concur.

Review denied at 141 Wn.2d 1022 (2000).