# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 73805-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MARCEL CEDRAN SAMPSON, | ) | |
| Appellant. | ) | FILED: May 22, 2017 |

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2017 MAY 22 AH 9: 2

APPELWICK, J. — A jury convicted Sampson of three counts of first degree child molestation. On appeal, he argues that the trial court erroneously excluded his expert, admitted prejudicial hearsay, failed to compel testimony from two witnesses, and allowed two exhibit videos to be replayed to the jury. He also argues that his persistent offender sentence violates equal protection and that he should not be liable for appellate costs. We affirm.

## FACTS

Marcel Sampson was romantically involved with Fuhyda Tucker. Tucker discovered that Sampson was also seeing other women. One day, in March 2009, while Sampson stopped by Tucker's apartment, Tucker looked through Sampson's phone for evidence of his infidelity. Instead, Tucker found a video of her daughter, P.W., taking off her clothes and preparing to shower.

Tucker notified the police. After discovering more about Sampson's past, she also notified Janine Thornton, with whom Sampson had also been romantically involved.

A few months later, in June 2009, Thornton's niece, 13 year old P.R., reported to her school principal that a man named Marcel had sexually assaulted her. The principal alerted Detective Donna Stangeland. Detective Stangeland then interviewed P.R. P.R. disclosed that some of the assaults had occurred at Thornton's house.

Detective Stangeland contacted Thornton, and notified her of P.R.'s allegations. Thornton has five children, including L.H. and L.R. Sampson would occasionally babysit L.H. and L.R. Thornton admitted to Stangeland that L.H. and L.R. had told her that Sampson had sexual contact with them. Thornton did not disclose this abuse to the authorities until being contacted by Stangeland because she was fearful of losing custody of her children. L.R. had told Thornton that Sampson had drank L.R.'s urine, and tried to touch her genitals. L.H. had told his mother that Sampson had tried to sodomize him, that "white stuff" was coming out of Sampson's penis, and that Sampson had put L.H.'s penis in his mouth.

In 2011, Sampson was found guilty of first degree rape of child, first degree child molestation, tampering with a witness, domestic violence felony violation of a court order, and two counts of communication with a minor for immoral purposes. This court overturned the convictions of rape of a child, child molestation, and communicating with a minor for an immoral purpose, because

the trial court erroneously admitted evidence of Sampson's prior bad acts. State v. Sampson, No. 67868-0-I; slip op. at 15-16 (Wash. Ct. App. July 1, 2013) (unpublished), http://www.courts.wa.gov/opinions/pdf/678680.pdf.

Sampson was eventually recharged with three counts of child molestation in the first degree, and two counts of communication with a minor for immoral purposes. At the second trial, he was convicted of the three counts of child molestation in the first degree for his abuse of L.R., L.H., and P.W. But, he was acquitted of both counts of communication with a minor for immoral purposes, which involved L.R. and another child, L.R. 1998.[1] He was sentenced to life in prison as a persistent offender. Sampson appeals.

### DISCUSSION

Sampson makes seven arguments on appeal. First, he argues that the trial court erroneously excluded expert testimony. Second, he argues that the trial court committed reversible error by admitting hearsay testimony. Third, he contends that the trial court erred by not compelling the attendance of two witnesses. Fourth, he argues that the trial court erred in allowing the jury to review three video exhibits. Fifth, he alleges that the foregoing errors amount to cumulative error. Sixth, he argues that his persistent offender life sentence violates equal protection. Finally, he also contends that he should not be liable for appellate costs due to his indigency.

---

[1] L.R. 1998 was the alleged victim of count V, communicating with a minor for immoral purposes, for which Sampson was found not guilty. L.R. 1998 is L.R. and L.H.'s cousin. We identify her by initials and birth year (L.R. 1998) to distinguish her from the other child with initials L.R.

## I.   Exclusion of Expert Testimony

Sampson first argues that the trial court erred in excluding expert testimony.  Sampson planned to call Dr. John Yuille as an expert witness.  Dr. Yuille is a professor emeritus of psychology at the University of British Columbia.  His research is in human memory and interviewing techniques.

Yuille's report discussed evaluating child witnesses' credibility.  Using what he describes as "statement analysis," Dr. Yuille purports to analyze whether a child's recollections are the product of actual memories.  He concludes, based on statement analysis, that the child witnesses' memories here were likely "contaminated," and that it is "impossible to support the credibility of the allegations."  He cited three reasons for this conclusion: the children's allegations changed with the passage of time, the allegations were characterized by "incoherent or unlikely features," and that the evidence may have been influenced by communication between witnesses.

The State moved to exclude Dr. Yuille's testimony.  The trial court granted this motion:

> It . . . is based upon things that everybody deals with in everyday life, which is conflicting statements, resolving contradictory statements between people, statements that change over time, statements being influenced by what other people have said and suggestibility.
>
> And furthermore, probably most importantly, it clearly invades the province of the jury.  I mean, it's the jury's job to decide credibility, and that's exactly what Dr. Yuille is proposing to do, is to basically comment on the credibility of the witnesses here, and that's what the jury needs to decide.  So I'm not going to allow Dr. Yuille to testify about that before the jury.

On appeal, Sampson argues that the trial court abused its discretion, because Dr. Yuille would have assisted the jury in making sense of inconsistencies in the children's stories. Sampson contends that Dr. Yuille would not simply opine on whether the children were lying. Rather, Sampson argues, Dr. Yuille would have assisted the jury in evaluating the reliability of the child witnesses' statements, which he argues is outside the competence of ordinary laypersons.

The admissibility of expert testimony is governed by ER 702, and requires a case by case inquiry. State v. Willis, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004). Under ER 702, a qualified expert may testify regarding scientific, technical, or other specialized knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue. To admit expert testimony under ER 702, the trial court must determine that the witness qualifies as an expert and that the testimony will assist the trier of fact. In re Det. of McGary, 175 Wn. App. 328, 338-39, 306 P.3d 1005 (2013)

This court reviews a trial court's decision on whether to admit expert testimony for abuse of discretion.[2] See State v. Kalakosky, 121 Wn.2d 525, 541,

---

[2] Sampson acknowledges that exclusion of expert testimony under the rules of evidence is reviewed for abuse of discretion. But, he also argues that the exclusion of the expert testimony infringed on his constitutional right to present a defense. He therefore argues that the panel should review this aspect of Dr. Yuille's exclusion de novo. But, a defendant's right to present a defense is subject to established rules of evidence designed to assure fairness and reliability. State v. Lizarraga, 191 Wn. App. 530, 553, 364 P.3d 810 (2015), review denied, 185 Wn.2d 1022, 369 P.2d 501 (2016). Therefore, "a defendant's interest in presenting relevant evidence may 'bow to accommodate other legitimate interests in the criminal trial process.' " Id. (quoting Untied State v. Scheffer, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)). Accordingly, we review the exclusion of Dr. Yuille's testimony for abuse of discretion.

852 P.2d 1064 (1993). A trial court's discretion is broad, and its decision should be reversed only if it rests on unreasonable or untenable grounds. <u>State v. Rafay</u>, 168 Wn. App. 734, 783-84, 285 P.3d 83 (2012).

Sampson relies primarily on <u>State v. Allen</u>, 176 Wn.2d 611, 294 P.3d 679 (2013). There, a key fact was identification of the defendant, which was in part based on his race. <u>Id.</u> at 614-15. A plurality of the Supreme Court held that the trial court did not abuse its discretion in refusing to instruct the jury that it is more difficult for some individuals to give eyewitness identifications of members of another race. <u>Id.</u> at 614-15, 624. Despite this holding that seemingly cuts against Sampson, he cites <u>Allen</u> because the plurality noted that expert testimony would be an available tool on the issue of cross racial identification.[3] <u>Allen</u>, 176 Wn.2d at 624 n.6.

Nevertheless, <u>Allen</u> does not mandate admission of Dr. Yuille's testimony. The plurality's only comment on expert testimony was a two sentence footnote that noted that experts are available to the parties. <u>Id.</u> at 624 n.6. The court did not explore the scope of expert testimony that would be admissible, or declare that a trial court <u>must</u> permit such testimony. <u>See id.</u> The court did not indicate that these experts are entitled to comment on the truthfulness of witnesses' testimony. <u>See id.</u> Moreover, the issue in <u>Allen</u> was a cautionary instruction. <u>Id.</u>

---

[3] Sampson also cites <u>State v. Lawson</u>, 352 Or. 724, 291 P.3d 673 (2010) as persuasive authority. Similar to <u>Allen</u>, the Oregon Supreme Court held that expert testimony may be admissible to "educate the trier of fact concerning variables that can affect the reliability of eyewitness identification." <u>Id.</u> at 761. Like <u>Allen</u>, this case addressed eyewitness identification evidence, not credibility. <u>Id.</u> at 727.

at 614. But, here the issue is whether an expert must be permitted to tell the jury whether another witness is in fact telling the truth. And, Allen addressed unique issues related to cross-racial identification, not commonly understood indicia of credibility such as inconsistent stories or witness collusion. Id. at 615.

Experts may not state an opinion about a victim's credibility, because such testimony invades the province of the jury to weigh the evidence and decide the credibility of witnesses. State v. King, 131 Wn. App. 789, 797, 130 P.3d 376 (2006). But, Dr. Yuille's report did just that. It explicitly stated that it was "impossible to support the credibility of the allegations." The three bases that Dr. Yuille's analysis relied upon—inconsistencies, "incoherent or unlikely features," and potential witness collusion—were all within the understanding of an ordinary layperson. They did not require expert testimony for the jury to understand.

The trial court did not abuse its discretion in excluding Dr. Yuille's testimony.

II.  Hearsay

Sampson next contends that the trial court committed reversible error by admitting hearsay statements of the children and of the detective.

A. Child Hearsay

Sampson contends that the trial court erroneously admitted statements that were not admissible under the child hearsay exception. A child's out-of-court statement about sexual acts performed with or on the child is not subject to the prohibition on hearsay if the trial court finds that the statement is sufficiently reliable and the child testifies at the hearing. RCW 9A.44.120. By its terms, this

rule does not apply to a statement by a child describing an act of sexual contact performed on a different child. State v. Harris, 48 Wn. App. 279, 284, 738 P.2d 1059 (1987).

Video recordings of interviews of L.H. and L.R. were admitted as exhibits.[4] Sampson argues that statements made by L.H. and L.R. about acts that they witnessed Sampson perform on the other were not admissible, because RCW 9A.44.120 applies only to statements about acts against the child individually.

The State concedes that the trial court erred in admitting out-of-court statements by L.H. and L.R. about acts not performed on themselves personally. But, the State contends that the error was harmless, because, during their in court testimony, L.H. and L.R. repeated their out-of-court statements about acts that they saw Sampson perform on the other.[5] Sampson contends that the error requires reversal because it bolstered the credibility of the children's in court testimony.

We will not reverse due to an error in admitting evidence that does not result in prejudice to the defendant. State v. Thomas, 150 Wn.2d 821, 871, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). An evidentiary error is not prejudicial unless there is a reasonable probability that, without the error, the

---

[4] Exhibit 10 is a video of a child interview specialist's interview with L.R. Exhibit 11 is a video L.H.'s interview with the same specialist. Transcripts of L.R.'s and L.H.'s interviews were admitted as exhibits 15 and 16, respectively.

[5] The State also argues that this argument was not preserved. Sampson objected to the admission of the videos on hearsay grounds, but did not identify the specific portions of the video that are hearsay. This objection is sufficient to warrant review.

outcome of the trial would have been different. See State v. Gower, 179 Wn.2d 851, 854-55, 321 P.3d 1178 (2014). The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole. State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

L.R.'s out-of-court interview focused on Sampson's acts against her. But, multiple times during the interview contained in exhibit 15, L.R. also described Sampson's sexual contact with her brother, L.H. She stated that she witnessed Sampson touch L.H.'s bottom, and put his "privacy" in L.H.'s "butt." But, during her trial testimony, L.R. testified to witnessing the same acts. The hearsay in the interview exhibit was merely duplicative of her testimony. And, L.H. testified at trial that Sampson, more than once, touched his "bottom" with "[h]is thing." L.H. also testified that Sampson had put his mouth on his penis. L.R.'s interview statements about Sampson's acts against L.H. that she witnessed were merely duplicative of her in court testimony.

L.H.'s out-of-court interview focused on Sampson's acts against L.H. But, L.H. testified that Sampson had touched L.R. on her bottom. L.R. also testified about Sampson's other sexual acts against her. The only hearsay from L.H. about L.R. that Sampson points to is L.H.'s statement that Sampson had "drank his sister's pee." L.H. did not repeat this claim in his testimony. But, her mother, Thornton, testified that L.R. had told her that Sampson had "drunk her pee." L.R.'s statement to her mother qualifies for admission as child hearsay under RCW 9A.44.120, because it is a statement by L.R. about Sampson's acts against

9

L.R. And, Sampson did not object to Thornton's testimony about L.R.'s statement.

There is not a reasonable probability that excluding the hearsay from the videos and their transcripts would have changed the result in this case. The error was harmless.

B. Detective's Testimony

Sampson also contends that the trial court erred in allowing Detective Stangeland to testify regarding statements made by Thornton.

Detective Stangeland testified that Thornton called Stangeland and told her that Sampson's mother had banged on her front door and she was worried that this was an act of retaliation. Pretrial, the State had stated it would offer this evidence from Thornton herself, as evidence of Sampson's consciousness of guilt. But, it did not. Instead, it came into evidence in the form of hearsay testimony, with Stangeland testifying about what Thornton had told her. Sampson objected on hearsay grounds, but was overruled. The State concedes that the trial court should have sustained this objection, but argues that the error was harmless.

Sampson contends that this error warrants reversal because it shows Sampson's consciousness of guilt. But, there were numerous other pieces of evidence that showed his consciousness of guilt. Most notably, Sampson himself testified that he attempted to pay Thornton and Tucker to leave him alone. One of Sampson's girlfriends, Christina Rock, testified that while Sampson was in jail, he asked her to get rid of a laptop. And, Rock confirmed

Sampson's own statements about paying off Thornton and Tucker, testifying that Sampson had discussed it "[d]ozens of times."

Given that Sampson admitted to attempting to pay Thornton, the hearsay evidence that his mother tried to intervene was harmless. The erroneous admission of the hearsay testimony from Stangeland was harmless.

III. Attendance of Witnesses

Sampson contends that the trial court erred in not compelling the attendance of two witnesses at trial.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." The defendant's right to compel witness testimony is part of the right to present a defense. State v. Wimbish, 100 Wn. App. 78, 82, 995 P.2d 626 (2000). But, although guarded jealously, that right is not absolute. State v. Smith, 101 Wn.2d 36, 41, 677 P.2d 100 (1984).

The defendant's right to obtain witnesses in his favor applies only to witnesses that are material to the defense. Id. And, the defendant bears the burden of establishing materiality. Wimbish, 100 Wn. App. at 82. We review a trial court's decision on whether to compel witness testimony for abuse of discretion. See State v. Lodge, 42 Wn. App. 380, 391-92, 711 P.2d 1078 (1985).

A. N.P.

First, Sampson argues that the trial court should have compelled the testimony of N.P. N.P. is Tucker's child and P.W.'s brother. N.P. testified at the

first trial. But, the State declined to pursue charges for acts involving N.P. at the second trial. Sampson nevertheless sought to compel N.P.'s testimony because, he contends, N.P.'s allegations against Sampson were inconsistent, and therefore tended to suggest a lack of credibility. And, even though the second trial did not involve charges relating to N.P., Sampson argues that N.P.'s inconsistent story casts doubt about the charges involving Tucker' daughter, P.W.

N.P. resides in California. Before an out-of-state witness can be compelled to testify in accordance with RCW 10.55.060, the party seeking the presence of the witness must establish that the witness' testimony is material. Wimbish, 100 Wn. App. at 83. The mere assertion that witnesses are material is insufficient. Id. Rather, the party seeking attendance of the witness must submit an affidavit or other competent evidence presenting facts to which the witness will testify. Id.

Sampson offered two sources of evidence in support of his motion. First, he provided a declaration from his attorney that stated N.P. was a material witness, because his testimony might reveal his mother's motives to influence her children to frame Sampson. But, the declaration does not purport that Tucker in fact instructed her children to frame Sampson. Instead, it points only to circumstances surrounding N.P.'s allegations that show N.P.'s mother disliked Sampson. Second, as an appendix to his motion, he provided a copy of the previous appellate decision, a portion of which discussed the inconsistency of N.P.'s allegations. But, the opinion's discussion of N.P.'s prior testimony merely

states that N.P. failed to articulate certain details of the alleged sexual abuse. Such evidence does not go to the defense's theory that Sampson is being framed.

Moreover, Tucker, N.P.'s mother, testified. Given that Tucker's motive to fabricate allegations against Sampson was the primary reason Sampson sought N.P.'s testimony, the importance of N.P.'s testimony was reduced. And, the trial court noted that Sampson could renew his request to compel N.P., should he lay a more specific foundation regarding the material testimony he would elicit from N.P. Sampson never did. Given these facts, the trial court did not abuse its discretion in declining to subpoena N.P.

### B. Victim Advocate

Second, Sampson argues that the trial court should have compelled the testimony of the victim advocate. Sampson introduced an allegedly exculpatory e-mail message as an exhibit. The message, sent by the victim advocate to the prosecutor, stated that L.R. 1998's mother said that L.R. 1998 said "it didn't happen to her and that [P.W.] told her to say those things." The allegation involving L.R. 1998 was that Sampson had shown pornography to L.R. 1998.

Sampson sought the victim's advocate's testimony about the circumstances that led to this potentially exculpatory e-mail. The trial court denied this motion, determining that the advocate's testimony was not necessary. Detective Stangeland, testified about her knowledge of the e-mail's substance. She stated that she knew nothing besides what the e-mail stated. And, in their respective testimony, neither L.R. 1998 nor her mother remembered L.R. 1998

recanting her story. The probative value of the advocate's testimony was likely minimal, because the jury found Sampson not guilty of the only charged crime that involved L.R. 1998 without the benefit of it.

And, under RCW 5.60.060(7), an advocate may not testify about communication between the advocate and the sexual abuse victim. Therefore, the advocate would not have been able to testify about what L.R. 1998 had told her that led to the message. The trial court did not abuse its discretion in declining to compel the victim advocate's testimony.

IV.    Replay of Child Testimony

Sampson contends that the trial court erred in allowing the jury to review video exhibits.

The jury requested to review three video exhibits. Two videos were of L.R.'s interviews with a child interview specialist. One video was of L.H.'s interview with the child interview specialist. In the videos, both children allege that Sampson engaged in sex acts with themselves and others. Over defense counsel's objection, after hearing arguments from both sides, the trial court granted the jury's request:

> I'm going to grant that request and we'll play those videos for you. I want to let you know that we're just going to play the three videos straight through, we're not going to go back and forth or rewind or anything like that. You're not to talk to each other while the videos are playing.
>
> After it's all done, you can go back in the jury room and talk about it as much as you want, because that's part of your deliberative process, but we're just going to provide -- play the videos for you and that will be it.

14

We review a trial court's decision to replay testimony for the jury during deliberations for abuse of discretion. State v. Morgensen, 148 Wn. App. 81, 86-87, 197 P.3d 715 (2008). CrR 6.15(f)(1) provides that:

> In its discretion, the court may grant a jury's request to rehear or replay evidence, but should do so in a way that is least likely to be seen as a comment on the evidence, in a way that is not unfairly prejudicial and in a way that minimizes the possibility that jurors will give undue weight to such evidence.

Viewed in light of the principle that a jury must remain impartial as it determines the facts, reviewing testimony during deliberations is disfavored. State v. Koontz, 145 Wn.2d 650, 654, 41 P.3d 475 (2002).

Sampson argues that the same concerns that led the court to reverse in Koontz are also present in this case. In Koontz, our Supreme Court held that replaying video of trial testimony requires trial courts to apply protections against "undue emphasis" that consider the effect and manner of video replay. 145 Wn.2d at 657. Specifically, the Koontz video exposed views of the witnesses' demeanor not previously available to the jury. Id. at 660. The jury was looking for the witnesses' "facial expressions and whatnot." Id. at 659.

The court held that replaying the video of trial testimony in this manner was error. Id. at 660. It reasoned that courts should balance the need to replay the testimony with procedural safeguards, such as limiting the amount of times the jury can review the video, to prevent juries from overemphasizing the evidence. Id. at 657. Koontz instructs that "the unique nature of videotaped testimony requires trial courts to apply protections against undue emphasis that consider both the effect and the manner of video replay." Id.

But, Koontz is clearly distinguishable.[6] Most notably, the Koontz court explicitly stated that replaying videotaped trial testimony should not be treated under the same standard as an admitted sound or video exhibit. Id. at 659. And, the evidence at issue here was an admitted exhibit, not videotaped trial testimony. And, the trial court allowed the jury to review the testimony only once, outside the jury room, without discussion while the videos were being played. The circumstances here were different than in Koontz.

We hold that the trial court did not abuse its discretion in replaying the video exhibits.

V. Cumulative Error

Sampson also argues that the foregoing errors amount to cumulative error. Cumulative error warrants reversal when there have been several trial errors that standing alone may not be sufficient to justify reversal, but when combined may deny a defendant a fair trial. State v. Grieff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

The only errors we find are the two harmless evidentiary errors. They went to different issues. The error relating to Stangeland's testimony went to consciousness of guilt. And, it was inconsequential given that Sampson himself

---

[6] Sampson also cites United States v. Binder, where child credibility was also at issue. 769 F.2d 595, 600-01 (9th Cir. 1985), overruled on other grounds by United States v. Morales, 108 F.3d 1021 (9th Cir. 1997). But, the Binder court found an abuse of discretion precisely because the court did not take critical precautions. Id. at 601. First, some communications between the judge and jury occurred without consulting counsel or the defendant. Id. at 598. And, the videotape was replayed in the privacy of the jury room. Id. The court also allowed the jury to skip preliminary portions of the tape. Id. None of these circumstances are present here. Binder is distinguishable.

admitted to attempting to pay Thornton and destroy a laptop. The error relating to the children's hearsay in their out-of-court interviews went to credibility. But, the children's testimony in court allowed the jury to assess their credibility directly, independent of whether their prior hearsay statements were factually the same. The isolated hearsay statements, when combined with Stangeland's hearsay testimony, do not rise to cumulative error. Their cumulative effect did not deprive Sampson of a fair trial.

VI.    Equal Protection

Sampson was sentenced to life in prison due to his status as a persistent offender. When a prior conviction is an element of a crime rather than a basis for aggravating a sentence, the State must prove its existence to a jury beyond a reasonable doubt. State v. Langstead, 155 Wn. App. 448, 453, 228 P.3d 799, (2010). Sampson argues that his sentence violates equal protection, because his prior offenses were not elements, but rather "sentencing factors" that needed to be proven by only a preponderance of evidence. He contends that we should apply strict scrutiny to the persistent offender sentencing factor. And, he argues that, under either strict scrutiny or rational basis, the classification violates equal protection.

But, this court has rejected virtually identical arguments on multiple occasions. For example, in Langstead, this court held that a persistent offender life sentence satisfied rational basis review. Id. at 456-57; see also State v. Witherspoon, 171 Wn. App. 271, 305, 286 P.3d 996 (2014) ("[T]here is a rational basis for distinguishing between 'persistent offenders' and 'nonpersistent

offenders.' "). In accord with these previous decisions, we hold that Sampson's persistent offender sentence does not violate equal protection.

## VII. Costs on Appeal

Sampson asks that we deny any request for costs on appeal because the trial court deemed him indigent. At oral argument, the State withdrew its opposition to Sampson's request to waive costs due to indigency. We therefore hold that, due to Sampson's indigency, the State is not entitled to costs on appeal.

We affirm.

WE CONCUR:

Trickey, ACJ