IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                              Respondent,<br>     v.<br><br>NICETO AMOR CANETE,<br><br>                                 Appellant. | No. 84382-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — In August 2017, S.W. informed her mother that Niceto Canete, her stepfather, had repeatedly molested her. Canete was later charged with one count of child molestation in the first degree and one count of child rape in the second degree. Although charged in 2017, Canete's trial did not begin until March 2022. Despite this delay, Canete did not interview N.C., S.W.'s younger sister, before trial began. N.C. did not testify and Canete was convicted on both counts. On appeal, Canete raises a variety of issues. He contends that the trial court erred by (1) excluding N.C.'s testimony in violation of his right to compel witnesses and (2) improperly commenting on the evidence by providing a no-corroboration jury instruction. He also asserts that the State interfered with his ability to interview N.C. in violation of his right to counsel and that his counsel was ineffective in failing to interview N.C. before trial. In addition, Canete argues that the prosecutor committed misconduct by improperly speculating as to Canete's first-person thought process and misstating the burden of proof in

closing arguments. Finally, he asserts cumulative error. Finding his arguments without merit, we affirm.

FACTS

Niceto Canete was married to Katherine Romero, S.W.'s mother, from June 2006 to August 2017. Romero had two children prior to the marriage, S.W. and D.R., and Canete and Romero had two children together. Canete, Romero, S.W., and her two younger sisters, N.C. and B.C., lived together in Whatcom County.

Canete was a strict stepfather, who punished S.W. by grounding her, pinching her or hitting her with a yardstick. S.W. did not like having him in the home.

While living together, Canete sometimes woke S.W. up by sitting beside her on her bed. S.W. recalled on one occasion, when she was 11 or 12 years old, that Canete woke her up by putting his hands in her pants, touching her bottom and digitally penetrating her vagina. He stopped when she moved.

Another time, after N.C. told Canete that S.W. had an iPod[1] she was not supposed to have, Canete sent S.W. to her room as punishment. Later that evening, Canete entered her room while she was sleeping and digitally penetrated her. When S.W. flinched, Canete stopped, rubbed her face to put her back to sleep and left the room. S.W. eventually moved to the living room, waiting for her mother to come home.

---

[1] An iPod is a pocket-sized device used to play music files.

When Romero arrived, S.W. waited until Canete left the room and told her mother what he had done. Romero sent S.W. to her bedroom, asking her to lock the door, before confronting Canete. Romero ended the relationship and ordered Canete out of the house. A month later, S.W. disclosed the assault to a school counselor who, as a mandatory reporter, informed law enforcement.

In August 2017, the State charged Niceto Canete with one count of child molestation in the first degree and one count of child rape in the second degree.

<u>Pre-Trial Motions</u>

Although Canete was charged in 2017, his trial did not begin until five years later, in March 2022. The same attorney represented Canete from filing through trial. In the five years prior to trial, Canete's attorney completed some defense interviews in 2018, some more before the omnibus hearing in 2022, and some the week prior to trial. Canete's attorney did not indicate the need for any additional discovery. Both parties confirmed the case was ready for trial.

The week before trial, Canete's attorney interviewed E.H., a friend of S.W. to whom S.W. had disclosed the abuse. In this interview, E.H. recounted her own experience with Canete, which was similar to S.W.'s. The morning of the trial, the State moved to admit E.H.'s testimony under ER 404(b). Canete objected, arguing that the introduction of evidence was untimely. The court noted that it was a close call but agreed that the request was untimely and denied the ER 404(b) motion.

Following denial of the motion, Canete sought an order allowing him to amend his witness list and depose N.C. Defense counsel sought an interview

with N.C. because she was present in the home the day of the second incident and could potentially provide relevant information. Neither the State nor defense counsel had N.C. on their witness list. Law enforcement never interviewed her.

In the several months leading up to trial, defense counsel sent five e-mails to the State concerning N.C.'s testimony. The first four e-mails discussed defense counsel's need to interview S.W.'s siblings. They did not specify N.C. in particular and did not explicitly request the State's help in facilitating the interviews. The fifth e-mail, sent a week before trial, specifically listed N.C. and stated that defense counsel had been seeking to interview the siblings for three years.

As N.C. was a minor, defense counsel asserted that all of the e-mails were requests for the State to help facilitate the interview. The State argued that they did not understand that Canete was seeking assistance to interview N.C. until the last e-mail, sent six days before trial began. Two days after the last e-mail, the State informed Canete that N.C.'s mother would not agree to an interview.

The court denied defense counsel's motion to amend the witness list and depose N.C., stating that the request to call N.C. as a witness was untimely, rendering compelling a deposition unnecessary.

<u>Trial</u>

Following S.W.'s testimony at trial, the State moved to amend the information to charge Canete with child molestation in the second degree instead of in the first degree. Defense counsel did not object.

Prior to closing, the court heard arguments on the parties' proposed jury instructions. The State proposed a no-corroboration instruction, reasoning that it was not necessary for the alleged victim's testimony to be corroborated in order for the jury to convict Canete. Defense counsel objected, arguing that the no-corroboration instruction constituted improper judicial comment on the evidence. The court proceeded with the instruction over the objection, noting that the instruction was a correct statement of the law.

During closing, the State made a few generalized statements about child sex abuse survivors and stated that its burden was to prove the case beyond a reasonable doubt as to the "material elements." The prosecutor also argued, in the first-person, what he suggested to be Canete's possible thought process while allegedly committing the crimes. Defense counsel did not object to any of these statements in closing.

Following jury deliberations, Canete was convicted of child molestation in the second degree and rape of a child in the second degree. The court imposed a standard range of 36 months for child molestation in the second degree and a minimum of 119 months for rape of a child in the second degree. Canete appeals.

## ANALYSIS

### Right to Present a Defense, to Compel Witnesses, and to Counsel

Canete asserts that the trial court violated his constitutional right to present a defense and compel witnesses when it denied his motion to amend his witness list and depose N.C. Canete also argues that the State violated his right

to counsel by denying him the opportunity to interview N.C. We conclude that Canete's rights were not violated both because he failed to establish that N.C.'s testimony would be material and favorable to the defense and because he had ample time to interview N.C. and failed to do so.

Whether a defendant's Sixth Amendment right has been violated presents a legal question that we review de novo. State v. Arndt, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). And we review the trial court's evidentiary rulings for an abuse of discretion. Arndt, 194 Wn.2d at 797. The trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Hampton, 184 Wn.2d 656, 670, 361 P.3d 734 (2015).

The Sixth Amendment of the United States Constitution and Article I, Section 22 of the Washington State Constitution provide a criminal defendant with the right to present a defense. State v. Jennings, 199 Wn.2d 53, 63, 502 P.3d 1255 (2022). This includes the right to compel witnesses at trial. State v. Maupin, 128 Wn.2d 918, 924, 913 P.2d 808 (1996). "This right is a fundamental element of due process." Taylor v. Illinois, 484 U.S. 400, 410, 109 S. Ct. 646, 98 L. Ed. 2d 798, (1988). But this right is not absolute. State v. McCabe, 161 Wn. App. 781, 787, 251 P.3d 264 (2011). For example, defendants can only compel witnesses who are material to the defense and who offer relevant testimony. State v. Smith, 101 Wn.2d 36, 41, 677 P.2d 100 (1984). The defendant has the burden of showing materiality, Smith, 101 Wn. 2d at 41, and relevant evidence is evidence "having any tendency to make the existence of any fact that is of

6

consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

More than the mere lack of testimony is necessary to establish a violation of the right. State v. Lizarraga, 191 Wn. App. 530, 552, 364 P.3d 810 (2015). To create such a violation, state conduct must impermissibly interfere with a defendant's ability to present a defense and that interference must cause the loss of material evidence, favorable to the defendant. McCabe, 161 Wn. App. at 787.

Canete asserts that the court's denial of his motion to depose N.C. and amend his witness list violated his right to compel witnesses. Because Canete fails to establish that N.C.'s testimony is material, relevant or favorable, the trial court did not violate his right in denying his motion to amend his witness list. The court's denial of Canete's motion to depose N.C. then flowed from the fact that she would not be allowed to testify. As the ability to depose a witness is simply a discovery issue, denying the request to depose a witness cannot by itself violate Canete's right to present a defense. See, e.g. State v. Mankin, 158 Wn. App. 111, 121, 241 P.3d 421 (2010) (noting that a criminal defendant is not, as a matter of right, entitled to depose prospective witnesses); CR 26 (depositions are governed by the rules of discovery).

Canete concedes that "it is difficult to determine the precise impact of N.C.'s testimony on the evidence at trial because she was never interviewed."[2] Such an interview, he continues, "*may* have produced evidence critical to the

---

[2] N.C. did take part in a forensic interview with Gail Tierney, a Child Forensic Interviewer from the Brigid Collins House in Whatcom County. She did not speak with the State or Defense Counsel.

defense." (Emphasis added.)  Even in his briefing, Canete admits that it is only "*possible* that N.C.'s testimony would have had a tremendous impact on the defense's case."  (Emphasis added.)  Canete cannot speak to what N.C.'s testimony might be because N.C. was never interviewed by counsel or law enforcement.  The only information Canete presents is his supposition as to what she saw and might say.  He could not even provide hearsay statements about the likely testimony.  And because he cannot speak to what N.C.'s testimony might be, Canete fails to establish materiality, relevance, or favorability.  The court did not violate Canete's right to compel witnesses.

Canete also asserts that his right to counsel was violated because he was unable to interview N.C.  This violation, he argues, arose from the State's refusal to facilitate an interview, which then prevented him from interviewing N.C. before trial.  But Canete mischaracterizes his efforts to interview N.C.

Defense counsel's purported reason for not interviewing N.C. on his own was that it was common practice for the State to help facilitate interviews with children.  Over the course of the six months leading up to trial, defense counsel sent five e-mails to the State.  Each e-mail noted that defense counsel had yet to interview S.W.'s siblings.  But contrary to Canete's assertions, none of the e-mails actually ask the State for help in facilitating the interviews.  In fact, it is not until the fifth e-mail that defense counsel even mentions N.C. by name.  Even then, the e-mail only states, "I have been seeking to interview [S.W.'s] siblings for

about 3 years."[3] And when Canete made clear that he wanted help facilitating the interviews, the State responded within two days. The record does not demonstrate that the State interfered with Canete's ability to interview N.C. Without state interference, Canete fails to establish a violation of his right to counsel.

Neither the court nor the State violated Canete's right to present a defense, right to compel witnesses, or right to counsel.

### Ineffective Assistance of Counsel

Canete next argues that defense counsel's failure to interview N.C. in the five years prior to trial constitutes ineffective assistance of counsel. Because Canete does not establish that the outcome of the trial would have been different, we conclude that defense counsel's actions do not constitute ineffective assistance of counsel.

Ineffective assistance of counsel claims are "mixed questions of law and fact" that we review de novo. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).

To demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant was prejudiced by that deficient performance. In re Pers. Restraint of Crace, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). To establish deficient performance, the defendant must show that counsel's performance fell below an objective standard of

---

[3] The record before us does not show any further evidence that defense counsel had actually sought these interviews for three years.

reasonableness. State v. Goldberg, 123 Wn. App. 848, 852, 99 P.3d 924 (2004). This includes failing to interview witnesses and giving no reason for doing so. State v. Jones, 183 Wn.2d 327, 352 P.3d 776 (2015). " 'To establish prejudice, a defendant must show that but for counsel's performance, the result would have been different.' " Goldberg, 123 Wn. App. At 852 (quoting State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002)).

It is the defendant's burden to overcome the " 'strong presumption' " that counsel's representation was effective. State v. McFarland, 127 Wn.2d 322, 337, 899 P.2d 1251 (1995) (quoting State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987)). " 'If trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim that the defendant received ineffective assistance of counsel.' " Goldberg, 123 Wn. App. At 852 (quoting McNeal, 145 Wn.2d at 362).

Canete contends that counsel's performance was deficient in failing to interview N.C. in the five years preceding trial. We agree.

In arguing that the State violated his right to present a defense, both Canete and the State point to five e-mails that indicate defense counsel's intent to interview N.C. While defense counsel's assertion that it is common practice for the State to arrange interviews with minors may be true, his e-mails to the State span only the six months leading up to trial and do not specifically ask for the State's help. Defense counsel had four and a half years before that to interview N.C. The State concedes that defense counsel "willfully failed to take

10

timely steps to interview N.C." Defense counsel had five years in which to interview N.C. and confirmed the case for trial, not having done so.

Jones is instructive here. Failing to interview a witness without real reason, rather than out of strategy, constitutes deficient performance. Jones, 183 Wn.2d at 340. Canete asserts that, as N.C. was in the home the evening of the second incident, she could have been able to testify as to whether Canete ever entered S.W.'s room. Defense counsel knew from the beginning of the case that N.C. was in the home, and given that the police did not interview her, the only way to find out what she knew would be to interview her himself. Defense counsel failed to do so. Defense counsel's conduct is analogous to Jones: in failing to interview N.C., rather than making the strategic decision not to, defense counsel's performance was deficient.

Although we agree that counsel's performance was deficient, we conclude that Canete fails to demonstrate that deficiency caused prejudice. Canete concedes that "it is difficult to determine the precise impact of N.C.'s testimony on the evidence at trial because she was never interviewed." Such an interview, Canete continues, "*may* have produced evidence critical to the defense." (Emphasis added.) As N.C. was never interviewed by the State, defense counsel or law enforcement, we do not know what she may or may not have testified to. And the possibility of unknown testimony, along with Canete's supposition as to what she might say, is not enough to establish that, but for counsel's deficient performance, the result of the proceeding would have been

11

different. Without providing any evidence establishing that the outcome of the trial would have been different, Canete cannot establish prejudice.

Defense counsel's actions did not constitute ineffective assistance of counsel.

Jury Instruction

Canete contends that the court made an improper judicial comment on the evidence by giving a no-corroboration instruction. We disagree.

"Whether a jury instruction is legally correct is reviewed de novo." State v. Chenoweth, 188 Wn. App. 521, 535, 354 P.3d 13 (2015). A challenge to jury instructions is reviewed in the context of all instructions given. State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

Article IV, section 16 of the Washington State Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." A trial judge improperly comments on the evidence if it gives a jury instruction that conveys to the jury their personal attitudes toward the merits of the case. State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). On the other hand, a jury instruction that does no more than accurately state the applicable law does not constitute an impermissible comment on the evidence. State v. Brush, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).

RCW 9A.44.020(1)[4] provides "[i]n order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be corroborated." Washington courts have consistently upheld no-corroboration instructions as correct statements of law under RCW 9A.44.020(1) when the instruction is given in reference to an alleged victim's testimony in sex offense cases. See, e.g., Chenoweth, 188 Wn. App. At 537 (holding that corroboration is not required in sex offenses); State v. Zimmerman, 130 Wn. App. 170, 182-83, 121 P.3d 1216 (2005) (holding that a no-corroboration instruction is not reversible error).

While instructing the jury, the court stated that "in order to convict a person of child molestation in the second degree or rape of a child in the second degree, it is not necessary that the testimony of the alleged victim be corroborated." (Capitalization omitted.) This is an accurate statement of the law and therefore the instruction does not constitute an impermissible comment on the evidence.[5]

Prosecutorial Misconduct

Canete raises three instances of prosecutorial misconduct, arguing that the prosecutor (1) improperly appealed to the passions and the prejudices of the jury by arguing generalizations about all child sex cases, (2) argued Canete's first-person thought process based purely on speculation and not on facts in

---

[4] The chapter includes both rape of a child in the second degree and child molestation in the second degree, the charges at issue. RCW 9A.44.076, .086.

[5] Canete's counsel acknowledged the accuracy of this jury instruction during closing arguments ("[T]he State is correct and it's a correct statement of the law that testimony is evidence, and corroboration is not required.").

evidence, and (3) misstated the burden of proof. As Canete does not demonstrate a substantial likelihood that the prosecutor's statements prejudicially affected the jury's verdict or that any potential prejudice could not have been fixed by a curative instruction below, we conclude that the prosecutor's actions did not constitute prosecutorial misconduct.

To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). To establish prejudice, the defendant must show a substantial likelihood that the error affected the jury verdict. State v. Molina, 16 Wn. App. 2d 908, 918, 485 P.3d 963 (2021). Where a defendant does not object at trial, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. Emery, 174 Wn.2d at 760. Under this heightened standard, the defendant must show that (1) no curative instruction would have obviated any prejudicial effect on the jury, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury. State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011). Counsel's decision not to object or to request a curative instruction "strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of trial." State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990).

We review claims of prosecutorial misconduct for an abuse of discretion, viewing the allegedly improper statements within the context of the entire case.

Molina, 16 Wn. App. 2d at 918. Here, Canete did not object to any of the three instances of alleged misconduct and therefore his claims are subject to a heightened standard of proof.

Canete first asserts that the prosecutor improperly appealed to the passions and prejudices of the jury by arguing generalizations about all child sex cases. But Canete fails to establish misconduct or prejudice. The prosecutor made two statements referencing child sex abuse survivors broadly. He stated first, "[S.W.] is a survivor of child sex abuse, and survivors of child sex abuse have no witnesses." A few minutes later he continued, "[c]hild sex abuse survivors have to find their voices." These statements, Canete argues, asked the jury to convict Canete "on behalf of all 'survivors' in 'child sex abuse cases' " rather than the facts of the case.

However, allegedly improper statements should be considered in the context of the prosecutor's entire argument. Molina, 16 Wn. App. 2d at 918. The prosecutor made these two comments, in passing, in the context of discussing details specific to this case. When viewed in the context of the prosecutor's entire closing argument, these statements were unlikely to result in substantial prejudice and any resulting prejudice could have been fixed by a curative instruction.

Canete next asserts that the prosecutor committed misconduct in arguing Canete's first-person thought process based purely on speculation and not on facts in evidence. The State concedes that this reference to Canete's first-person thought process was improper. We agree. However, the prosecutor's

15

statements here were limited in scope and tied closely to S.W.'s testimony and to Canete's behavior. While the prosecutor's statements of "[h]ow far can I go? . . . [h]ow far can I get with this? . . . [c]an I go a little further?" were improper, they were not the focus of the State's argument. Furthermore, those three statements were a small part of the entire closing argument. Simply pointing them out is not enough to establish that the misconduct had a substantial likelihood of affecting the jury.

Lastly, Canete argues that the prosecutor committed misconduct by misstating the burden of proof. Again, allegedly improper statements should be considered in the context of the prosecutor's entire argument. Molina, 16 Wn. App. 2d at 918. The prosecutor did misstate the burden of proof once, stating "[w]hat's important about that is that we have to prove our case beyond a reasonable doubt as to material elements of the charge okay? . . . [B]ut we don't have to prove everything about the case beyond a reasonable doubt." But he later stated the correct burden of proof, noting that "[n]ow, to convict the defendant of child molestation in the second degree, the following elements must be proved beyond a reasonable doubt, this is what I'm referring to." (Capitalization omitted.) He then listed each element as it connected to the facts of the case. He did the same for the charge of rape of a child in the second degree. Additionally, both the court and defense counsel stated the correct burden of proof. Viewed within the context of the entire closing argument, the misstatement was unlikely to result in substantial prejudice and any resulting prejudice could have been easily remedied by a curative instruction.

16

The prosecutor's actions did not result in prosecutorial misconduct.

Cumulative Error

Canete argues that if we are not satisfied that any of the previously discussed errors alone are enough to warrant reversal, the combined effects denied Canete a fair trial under the cumulative error doctrine. As there is little error, the combined effect is not enough to warrant a reversal.

The cumulative error doctrine applies when "several trial errors standing . . . alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). "The test to determine whether cumulative errors require reversal of a defendant's conviction is whether the totality of circumstances substantially prejudiced the defendant and denied [them] a fair trial." In re Pers. Restraint of Cross, 180 Wn.2d 664, 690, 327 P.3d 660 (2014) (abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018)). The defendant bears the burden of proving cumulative error. In re Pers Restraint of Lord, 123 Wn.2d 296, 332, 868 P.2d 835 (1994).

Here, there are only two established trial errors. The first is defense counsel's failure to interview N.C. The second is the prosecutor's improper speculation into Canete's first-person thought process. In both instances, however, Canete has failed to prove any prejudice. Because reversal under the cumulative error doctrine requires circumstances that substantially prejudiced the defendant and Canete has failed to show prejudice, reversal is not warranted.

The combined effects do not warrant a reversal under the cumulative error doctrine.

We affirm.

Smith, C.J.

WE CONCUR:

Feldman, J.          Dwyer, J.